UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ELLE SASSON, MAGA TEAM (HONG KONG)
LTD. and ELLE MOORE & G, LLC,

                    Plaintiffs,

    v.

HACHETTE FILIPACCHI PRESSE d/b/a ELLE
MAGAZINE,

                    Defendant.

Civil Action No. 15-cv-00194-VM

---

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(1)

**McCARTER & ENGLISH, LLP**
Gary H. Fechter
Lori J. Shyavitz
245 Park Avenue, 27th Floor
New York, NY 10167
Tel: (212) 609-6800
Fax: (212) 609-6921
gfechter@mccarter.com
lshyavitz@mccarter.com

*Attorneys for Defendant*
*Hachette Filipacchi Presse SA*

# TABLE OF CONTENTS

**Pages**

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTION ................................................................................................................... 1

I.  FACTUAL BACKGROUND ........................................................................................... 2

    A.  Hachette's Marks ............................................................................................... 2

    B.  The ELLE SASSON Trademark Application And Hachette's Letter .................... 3

II.  ARGUMENT ................................................................................................................. 7

    A.  The Standard For Dismissal ............................................................................... 7

    B.  Under The Totality Of The Circumstances, Plaintiffs Have Failed To Establish An
        "Actual Controversy" Sufficient To Establish Federal Jurisdiction" ..................... 8

        1.  The Opposition Does Not Give Rise To An Actual Controversy ............... 9

        2.  The Letter Does Not Confer Subject Matter Jurisdiction Upon This Court,
            Particularly Given Hachette's Subsequent Inaction ................................... 10

    C.  Plaintiffs Elle Moore & G LLC And Elle Sasson Do Not Have Standing To Bring
        This Declaratory Judgment Action ..................................................................... 12

        1.  Elle Moore ............................................................................................. 12

        2.  Elle Sasson ............................................................................................. 13

    D.  The Court Should Exercise Its Broad Discretion To Decline Jurisdiction ............ 14

    E.  Dismissal Of Plaintiffs' Claims With Prejudice Is Warranted, Because Any
        Further Attempts At Pleading Would Be Futile .................................................... 16

CONCLUSION ...................................................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*1-800 Flowers.com, Inc. v. Edible Arrangements, LLC,*
   905 F. Supp. 2d 451 (E.D.N.Y. 2012) ...................................................................9

*Am. Pioneer Tours, Inc. v. Suntrek Tours, Ltd.,*
   1998 WL 60944 (S.D.N.Y. Feb. 13, 1998) ........................................................9, 11

*APWU v. Potter,*
   343 F.3d 619 (2d Cir. 2003) .............................................................................7

*Bruce Winston Gem Corp. v. Harry Winston, Inc.,*
   2010 WL 3629592 (S.D.N.Y. Sept. 16, 2010) ....................................................10

*Continental Cas. Co. v. Coastal Sav. Bank,*
   977 F.2d 734 (2d Cir. 1992) ...........................................................................14

*Dow Jones & Co. v. Harrods, Ltd.,*
   237 F. Supp. 2d 394 (S.D.N.Y. 2002), *aff'd*, 346 F.3d 357 (2d Cir. 2003) ............14

*Enoch v. Enoch,*
   2006 WL 1006648 (M.D. Tenn. Apr. 14, 2006) .................................................14

*Foman v. Davis,*
   371 U.S. 178 (1962) ......................................................................................16

*Great Am. Ins. Co. v. Houston Gen. Ins. Co.,*
   735 F. Supp. 581 (S.D.N.Y. 1990) ..................................................................15

*Indigodental GMBH & Co. KG v. Ivoclar Vivadent, Inc.,*
   2008 WL 5262694 (S.D.N.Y. Dec. 10, 2008) .....................................................7

*Leonelli v. Pennwalt Corp.,*
   887 F.2d 1195 (2d Cir. 1989) .........................................................................16

*Liberty Cable Co. v. City of N.Y.,*
   893 F. Supp. 191 (S.D.N.Y. 1995) ....................................................................7

*Maryland Cas. Co. v. Pac. Coal & Oil Co,*
   312 U.S. 270 (1941) ....................................................................................8, 13

*MedImmune, Inc. v. Genentech, Inc.,*
   549 U.S. 118 (2007) .........................................................................1, 7, 8, 15

*Microsoft Corp. v. DataTern, Inc.*,
    755 F.3d 899 (Fed. Cir. 2014).................................................................................12

*Moore U.S.A. Inc. v. Standard Register Co.*,
    2001 WL 34076423 (W.D.N.Y. 2001) ...................................................................13

*Peconic Baykeeper, Inc. v. Suffolk Cty.*,
    600 F.3d 180 (2d Cir. 2010).................................................................................14

*Prasco, LLC v. Medicis Pharm. Corp.*,
    537 F.3d 1329 (Fed. Cir. 2008)..........................................................................8, 9

*Progressive Apparel Group, Inc. v. Anheuser-Busch, Inc.*,
    1996 WL 50227 (S.D.N.Y. Feb. 8, 1996) ..........................................................10, 11

*Russian Standard Vodka (USA), Inc. v. Allied Domecq Spirits & Wine USA, Inc.*,
    523 F. Supp. 2d 376 (S.D.N.Y. 2007)...................................................................12

*Sirius Satellite Research Inc. v. Acacia Research Corp.*,
    2006 WL 238999 (S.D.N.Y. Jan. 30, 2006) .........................................................11

*Sirius Satellite Radio, Inc. v. Acacia Research Corp.*,
    188 F. App'x 993 (Fed. Cir. 2006) .......................................................................11

*Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.*,
    819 F.2d 746 (7th Cir. 1987) ...............................................................................14

*Topp-Cola Co. v. Coca-Cola Co.*,
    314 F.2d 124 (2d Cir. 1963)..........................................................................9, 10, 15

*Vina Casa Tamaya S.A. v. Oakville Hills Cellar, Inc.*,
    784 F. Supp. 2d 391 (S.D.N.Y. 2011)............................................................8, 10, 14

*Warth v. Seldin*,
    422 U.S. 490 (1975)..............................................................................................12

**Statutes**

28 U.S.C. § 2201(a) ..............................................................................................................7

**Rules**

Fed. R. Civ. P. 12(b)(1).................................................................................................1, 5, 7

**Other Authorities**

Moore's Federal Practice - Civil § 57.22 .........................................................................9

## INTRODUCTION

Plaintiffs Elle Sasson, Maga Team (Hong Kong) Ltd. and Elle Moore & G, LLC (collectively, "Plaintiffs") have filed this preemptory action (the "Action") for declaratory judgment against Hachette Filipacchi Presse SA, incorrectly sued herein as "Hachette Filipacchi Presse d/b/a Elle Magazine" ("Hachette"), alleging that their use of the ELLE SASSON trademark does not infringe or dilute Hachette's famous ELLE trademarks. Plaintiffs' request for declaratory relief is baseless and does not confer jurisdiction on this Court.

Declaratory judgment is appropriate only in a case of actual controversy. In determining whether jurisdiction under the Declaratory Judgment Act exists, this Court must determine "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). Here, Plaintiffs have not met and cannot meet their burden under this test. As such, Hachette respectfully requests that this Court dismiss Plaintiffs' Amended Complaint in its entirety for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

Hachette, in accordance with the Court's Individual Practices, provided Plaintiffs with the legal support for its motion to dismiss pursuant to Rule 12(b)(1). In response, Plaintiffs have amended their Complaint. Plaintiffs filed the First Amended Complaint on January 11, 2016 (the "Amended Complaint"). The Amended Complaint does not, however, allege any new facts that would support jurisdiction under the Declaratory Judgment Act and the Amended Complaint should be dismissed, without leave to file another amended complaint because amendment

would be futile. Indeed, there are no facts that Plaintiffs can allege to support subject matter jurisdiction under the Declaratory Judgment Act.

## I.  FACTUAL BACKGROUND

### A.  Hachette's Marks

Since 1945, Hachette, directly and through its predecessors and licensees, has been engaged in the sale of a wide spectrum of goods and services under the mark ELLE, alone or with other words, including without limitation the publication, distribution and sale of the world-famous magazine entitled ELLE. Declaration of Fabienne Sultan ("Sultan Decl.") at ¶ 2; Declaration of Gary H. Fechter ("Fechter Decl.") at Ex. A (see U.S. Reg. No. 0758137, claiming first use in 1945). This magazine is a unique mixture of fashion, beauty, health, entertainment, fitness, pop culture, topical events, and food articles. Sultan Decl. at ¶ 2. ELLE magazine was originally published as a French-language magazine distributed in France in 1945, and the United States edition of ELLE magazine was first published in 1985. *Id.* at ¶ 3. Hachette, through various licensees, presently publishes ELLE magazine in at least 46 separate editions throughout the world. *Id.*

Hachette owns numerous U.S. registrations for marks containing the term ELLE in connection with various goods and services, including magazines, for which it has been registered since 1963, as well as other periodicals; clothing, for which it has been used in commerce since March 22, 1965 and registered since December 17, 1968; forums in the field of fashion and beauty; providing an on-line entertainment variety show, featuring fashion and beauty; and other goods and services (the "ELLE Marks"). *Id.* at ¶ 4. The ELLE Marks are famous by reason of Hachette's long and extensive use and promotion of goods and services offered in connection with the ELLE Marks. The registrations for the ELLE Marks are valid and subsisting, and many of Hachette's registrations are incontestable. Fechter Decl. at ¶ 2, Ex. A.

2

### B. The ELLE SASSON Trademark Application And Hachette's Letter

On February 21, 2013, Maurice and Elle Sasson (the "Sassons") filed U.S. Application No. 85855981 (the "Application") with the United States Patent and Trademark Office (the "USPTO"), seeking registration of the trademark ELLE SASSON, in connection with clothing in Class 25 (the "ELLE SASSON Mark"). Sultan Decl. at Ex. D (Amended Complaint) at ¶ 51; Fechter Decl. at Ex. B. After the Application was published, Hachette requested a 90 day extension of the deadline to file an opposition at the USPTO, which the Trademark Trial and Appeal Board ("TTAB") granted. Fechter Decl. at Ex. B.

Correspondingly, on September 13, 2013, Hachette's French counsel sent a letter to the Sassons regarding their Application (the "Letter"). Sultan Decl. at ¶ 5, Ex. D (Amended Complaint) at Ex. M. The Letter expresses Hachette's concern that consumer confusion is likely to occur as a result of the Sassons' use and registration of the ELLE SASSON Mark and requests that the Sassons cease their use of and efforts to register the ELLE SASSON Mark. *Id.* at Ex. D (Amended Complaint) at Ex. M. In order to avoid an opposition at the USPTO, the Letter goes on to propose a settlement, whereby the application for ELLE SASSON would be cancelled or amended to the unitary mark ELLESASSON (*i.e.*, without spaces). *Id.* In closing, the Letter states that if the Sassons do not respond within 20 days of the date of the Letter, Hachette "expressly reserves its rights to take appropriate measures including, where necessary, instituting legal proceedings and/or opposition proceedings." *Id.* Also on September 13, 2013, the Sassons assigned their interest in the Application to Plaintiff Maga Team (Hong Kong) Ltd. ("Maga Team"). *Id.* at ¶ 6. Three days later the Sassons recorded the assignment with the USPTO at reel 5112 and frame 0207. *Id.* at Ex. B; Fechter Decl. at Ex. B.

Maga Team's attorney, Yoram Ginach, replied on October 4, 2013 requesting further information on Hachette's reputation, and Hachette through French counsel provided that

information on November 7, 2013.  Sultan Decl. at ¶ 7.  ████████████████

████████████████████████████████████████████████████████ *Id.* at

¶ 8.  The parties agreed to an extension of the deadline to file an opposition at the USPTO by

another 60 days as they continued to negotiate.  *Id.* at ¶ 9.

████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████  Hachette

requested confirmation of the terms and reiterated the deadline date for Opposition to preserve its

rights in the event that its settlement proposal was not accepted.  *Id.* at ¶ 10.

████████████████████████████████████████████

████████████  and without an option for an additional deadline extension, on February 24, 2014,

Hachette filed an opposition to the Application in the USPTO, objecting to registration of the

ELLE SASSON Mark.  *Id.* at ¶ 11, Ex. C.  ████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████  *Id.*

at ¶ 12; Fechter Decl. at Ex. C.  Also in Spring 2014, Plaintiffs "released the first line" of Ms.

Sasson's eponymous clothing line.  Amended Complaint [D.I. 29] at ¶ 17.  This clothing is sold,

on information and belief, in the United States and in certain other countries in the world.  *See*

Sultan Decl. at ¶ 15, Ex. E.

Thereafter, the parties continued their settlement discussions.  *Id.* at ¶ 13.  ██████

████████████████████████████████████████████████  *Id.*  Those

discussions ultimately faltered in or about December 2014.  *Id.*  In one of the last

communications concerning settlement, Hachette's French counsel confirmed that Hachette

could not accept the terms proposed by Maga Team, and Maga Team's counsel replied that "proceedings before the TTAB should continue." *Id.*

Concurrently with the settlement discussions, the parties pursued the Opposition. Maga Team served discovery requests on Hachette, and on December 30, 2014, Hachette served its responses. Hachette also served discovery requests on Maga Team. *Id.* at ¶ 16. Hachette's discovery requests related to issues of both registration and use of the ELLE SASSON Mark. *Id.* at Exhibit F. Maga Team filed this declaratory judgment action several weeks before its responses to Hachette's discovery requests were due. Sultan Decl. at Ex. F.

On January 12, 2015, nearly a year after institution of the Opposition and nearly a year and a half after Hachette mailed the Letter, Plaintiffs filed this declaratory judgment action against Hachette. *See* Fechter Decl. at Ex. C. The Complaint sought a declaration that Plaintiffs "have not infringed upon or diluted" Hachette's trademark rights "by virtue of Plaintiffs' use, distribution, sales and/or other related activities." *Id.* at Ex. C at ¶ 4. The Complaint implied, but did not directly allege, that the year-and-a-half-old Letter and the nearly year old Opposition created an actual, present and justiciable controversy between Plaintiffs and Hachette, despite the fact that other than the U.S. Opposition, nowhere in the world did Hachette commence litigation, including a trademark opposition or cancellation proceeding.

Pursuant to Section II.A of the Court's Individual Practices, counsel for Hachette sent a communication to counsel for Plaintiffs on February 11, 2015, prior to the deadline to answer or move in response to the Complaint, advising that Hachette intended to file a motion to dismiss pursuant to Rule 12(b)(1) and provided the legal support for the anticipated motion. *Id.* at ¶ 5. On February 18, 2015, Plaintiffs provided their response, which included a proposed amended complaint. On March 3, 2015, the Court held the pre-motion conference. During the conference

the Court raised with the parties the possibility of assigning the case to a magistrate judge to oversee settlement discussions. Thereafter, the parties, under the guidance of Magistrate Judge Sarah Netburn, entered into settlement discussions. Unfortunately, a settlement has not been reached. *Id.* at ¶¶ 5-6.

On January 7, 2016, Magistrate Judge Netburn granted Plaintiffs leave to file an amended complaint in the Action. *See* Docket Entry 28. On January 11, 2016, Plaintiffs filed the First Amended Complaint. *See* Docket Entry 29.

The Amended Complaint does not differ substantially from the original Complaint or the proposed amended complaint submitted in response to Hachette's February 11, 2015 letter. It, too, seeks a declaration that Plaintiffs "have not infringed upon or diluted" Hachette's trademark rights "by virtue of Plaintiffs' use, distribution, sales and/or other related activities." Sultan Decl. at Ex. D at ¶ 4. The Amended Complaint implies, but does not directly allege, that the year-and-a-half-old Letter and the nearly year old Opposition create an actual, present and justiciable controversy between Plaintiffs and Hachette. The additional factual allegations submitted by Plaintiffs both in the proposed amended complaint and the Amended Complaint to show an actual controversy are merely excerpts from the parties' longstanding settlement discussions. *Compare* Fechter Decl. at Ex. C *with* Sultan Decl. at Ex. D. Moreover, instead of two claims, the Amended Complaint asserts three claims for declaratory relief. *See* Sultan Decl. at Ex. D. In addition, the Amended Complaint, unlike the original Complaint, includes requests in the *ad damnum* clause that the Court enter an order dismissing the Opposition before the TTAB with prejudice and ordering that Plaintiffs' Application proceed to registration. *See id.* at 17.

These allegations are insufficient on their face to establish subject matter jurisdiction over this declaratory judgment action, and this Court should dismiss this improper action under Fed. R. Civ. P. 12(b)(1).

## II.    ARGUMENT

### A.    The Standard For Dismissal

Pursuant to Fed. R. Civ. P. 12(b)(1), this Court may dismiss a complaint for lack of jurisdiction over the subject matter. See Fed. R. Civ. P. 12(b)(1). "It is well-established that when considering a motion to dismiss based on lack of jurisdiction, a court may consider matters outside the pleadings" including affidavits. *Liberty Cable Co. v. City of N.Y.*, 893 F. Supp. 191, 199, n.11 (S.D.N.Y. 1995); *see also APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003) ("[w]here jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits").

Plaintiffs' Amended Complaint contains three counts, each for declaratory judgment. The Declaratory Judgment Act (the "DJA") provides:

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration.

28 U.S.C. § 2201(a). "The phrase 'case of actual controversy' in the Act refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III." *Indigodental GMBH & Co. KG v. Ivoclar Vivadent, Inc.*, No. 08 Civ. 7657(RJS), 2008 WL 5262694, at *2 (S.D.N.Y. Dec. 10, 2008) (quoting *MedImmune*, 549 U.S. at 127).

In determining whether an "actual controversy" within the meaning of the DJA exists, "the question in each case is whether the facts alleged, under *all the circumstances*, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc.*,

549 U.S. at 127 (emphasis added and citing *Maryland Cas. Co. v. Pac. Coal & Oil Co*, 312 U.S. 270, 273 (1941)). The dispute must be "real and substantial and admit of specific relief through a decree of a conclusive character [and not] an opinion advising what the law would be upon a hypothetical state of facts." *Id.* The Federal Circuit has clarified that while *MedImmune* rejected the former test that a declaratory judgment plaintiff must have "reasonable apprehension" of suit as the sole means for establishing jurisdiction, such apprehension may contribute to the "totality of circumstances" that create jurisdiction. *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1336 (Fed. Cir. 2008). Ultimately jurisdiction is left to the discretion of the court. *See Vina Casa Tamaya S.A. v. Oakville Hills Cellar, Inc.*, 784 F. Supp. 2d 391, 397 (S.D.N.Y. 2011).

### B. Under The Totality Of The Circumstances, Plaintiffs Have Failed To Establish An "Actual Controversy" Sufficient To Establish Federal Jurisdiction

Plaintiffs are not permitted to request an advisory opinion from the Court, and must present evidence of an actual controversy to establish jurisdiction. *MedImmune*, 549 U.S. at 127. Plaintiffs have not and cannot meet this burden. Although Hachette sent the Sassons a letter on September 13, 2013 asking the Sassons to refrain from registering and using the ELLE SASSON trademark, Hachette did not take any subsequent action that would present a real and reasonable apprehension of liability on the part of Plaintiffs. Indeed, Hachette took no further action until February 24, 2014, when Hachette filed its Opposition to the Application in order to preserve its rights at the USPTO. When settlement discussions related to the Opposition failed, Hachette did not threaten to file an action in federal court, but instead threatened to pursue the Opposition and oppose any future applications filed by Plaintiffs. Inexplicably, Plaintiffs proceeded to launch their clothing line using the mark, Sultan Decl. at Ex. D at ¶ 17, and waited until January 12, 2015 — almost a year and half after Hachette sent the Letter and almost a full year after Hachette filed the Opposition — to file this action. Fechter Decl. at ¶ 4.

These facts belie any assertion by Plaintiffs that declaratory judgment is warranted. Declaratory relief is appropriate if and only if one or both parties have pursued a course of conduct that will result in imminent and inevitable litigation unless the issue is resolved by declaratory relief. Moore's Federal Practice - Civil § 57.22; *see Prasco*, 537 F.3d at 1340 (dismissing action for declaratory judgment and noting "[t]he lack of any evidence that the defendants believe or plan to assert that the plaintiff's product infringes their patents creates a high barrier to proving that Prasco faces an imminent risk of injury"). Here, almost a year and a half passed between the date of the Letter and Plaintiffs' institution of this Action. Hachette's conduct most certainly cannot be construed as threatening "imminent and inevitable litigation." Indeed, the fact that Plaintiffs did not file this Action immediately upon receipt of Hachette's Letter or institution of the Opposition and, instead, launched Ms. Sasson's eponymous clothing line, suggests that Plaintiffs themselves did not perceive Hachette's conduct to present a real and reasonable apprehension of liability on their part.

1.    **The Opposition Does Not Give Rise To An Actual Controversy**

In addition, Hachette's filing of the Opposition almost two years ago does not give rise to an actual controversy. The Second Circuit has held that the filing of an opposition in the USPTO, without more, does not create a real and justiciable controversy under the Declaratory Judgment Act. *See Am. Pioneer Tours, Inc. v. Suntrek Tours, Ltd.*, 97 CIV. 6220 (DLC), 1998 WL 60944, at *3 (S.D.N.Y. Feb. 13, 1998); *see also Topp-Cola Co. v. Coca-Cola Co.*, 314 F.2d 124, 126 (2d Cir. 1963); *1-800 Flowers.com, Inc. v. Edible Arrangements, LLC*, 905 F. Supp. 2d 451, 104 (E.D.N.Y. 2012) ("It is well-settled within this Circuit that the existence of a dispute before the T.T.A.B. over the registration of a party's mark, on its own, 'is insufficient to establish sufficient adversity for the purposes of a declaratory judgment action.'")

(quoting *Bruce Winston Gem Corp. v. Harry Winston, Inc.*, No. 09 Civ. 7352 (JGK), 2010 WL 3629592, at *5 (S.D.N.Y. Sept. 16, 2010)).

The rationale supporting this conclusion is that the controversy created by an opposition in the USPTO is limited to the right to register a trademark and does not have any bearing upon use of the trademark or infringement. Thus, courts within the Second Circuit have reasoned that the parties' rights in question in an opposition proceeding should be determined by the USPTO, because "[t]he Declaratory Judgments Act may not be used simply to remove a controversy from a forum where it properly belongs." *Topp-Cola*, 314 F.2d at 125-126; *Vina Casa Tamaya*, 784 F. Supp. 2d at 397.

Likewise, courts within the Second Circuit have held that settlement discussions occurring during opposition proceedings that reference issues of use of the mark are insufficient to establish an actual controversy because "[s]ettlement negotiations are just one factor in a totality of circumstances." *Vina Casa Tamaya*, 784 F. Supp. 2d at 396. "Seeking to obtain a concession in negotiations is a far cry from threatening to bring a coercive lawsuit to obtain the desired result." *Id.* (citing *Progressive Apparel Group, Inc. v. Anheuser-Busch, Inc.*, Civ. No. 95-2794 (DLC), 1996 WL 50227, at *4 (S.D.N.Y. Feb. 8, 1996)).

2.    **The Letter Does Not Confer Subject Matter Jurisdiction Upon This Court, Particularly Given Hachette's Subsequent Inaction**

The Letter from Hachette's French counsel sought to initiate settlement discussions with the Sassons. Indeed, the Letter contained a detailed settlement proposal that would have permitted Plaintiffs to register and use their mark in an altered form. The Letter did not threaten litigation, but merely reserved the right to "institute legal proceedings and/or opposition proceedings" if the Sassons did not respond to the letter within twenty days. Sultan Decl. at ¶ 5, Ex. D at Ex. M. Hachette, notably, took no immediate action at the USPTO or in any court (anywhere in the world) as the parties negotiated following the Letter. Some months later, upon

publication of the Application and after months of settlement discussions and an agreed extension of the opposition deadline, Hachette filed the Opposition in the USPTO merely to preserve its rights in the ELLE Marks. Sultan Decl. at ¶ 11, Ex. C. At no point in the year and five months since Hachette sent the Letter, did Hachette take any steps anywhere in the world to suggest that Plaintiffs were at risk of imminent litigation in any court, including in a United States federal court, based upon their use of the ELLE SASSON Mark. Plaintiffs themselves acknowledged that there was no risk of imminent litigation because Ms. Sasson's eponymous clothing line launched in Spring 2014 and, upon information and belief, is still being sold both in the United States and abroad. Sultan Decl. at Ex. D at ¶ 17; Ex. E.

Hachette's lack of legal action after sending the Letter dissipated any controversy between the parties. *See Sirius Satellite Research Inc. v. Acacia Research Corp.*, No. 05 CIV. 7495 (PAC), 2006 WL 238999, at *7 (S.D.N.Y. Jan. 30, 2006) *dismissed sub nom. Sirius Satellite Radio, Inc. v. Acacia Research Corp.*, 188 F. App'x 993 (Fed. Cir. 2006); *Am. Pioneer Tours*, 1998 WL 60944, at *5 (no justiciable controversy where letter produced fruitless negotiations and cancellation proceeding filed at USPTO); *Progressive Apparel Group*, 1996 WL 50227, at *2-4 (no jurisdiction where negotiations following letter were unsuccessful and defendants filed opposition proceeding). The fact that Hachette did not take any steps to pursue litigation enjoining Plaintiffs' use of the ELLE SASSON Mark at any point in the year and five months since it sent the Letter indicates the absence of any present controversy between the parties. As such, this Court lacks subject matter jurisdiction and Plaintiffs' Amended Complaint should be dismissed in its entirety.

**C.    Plaintiffs Elle Moore & G LLC And Elle Sasson Do Not Have Standing To Bring This Declaratory Judgment Action**

Each plaintiff must demonstrate standing to bring a declaratory judgment action, by establishing that there is "'a case or controversy' between himself [or herself] and the defendant within the meaning of Art. III." *Warth v. Seldin*, 422 U.S. 490, 498 (1975).  Even if the Court determines that Hachette's Letter and Opposition may form the basis of a case or controversy, the Letter and Opposition do not concern Elle Moore & G LLC ("Elle Moore") and Elle Sasson in their current capacities.  Thus, neither Plaintiff can demonstrate real, immediate and reasonable apprehension of suit.

**1.    Elle Moore**

Elle Moore cannot demonstrate existence of a case or controversy between it and Hachette, nor can it suggest that it has real and reasonable apprehension of liability.  The Amended Complaint mentions no action on the part of Hachette that was directed toward Elle Moore.  Indeed, neither the September 13, 2013 Letter nor the Opposition filed at the USPTO implicated Elle Moore.  When a particular party is not involved in the actions that are alleged to create the case or controversy, for example the mailing of cease and desist letters, the case or controversy cannot be extended to that party.  *See Russian Standard Vodka (USA), Inc. v. Allied Domecq Spirits & Wine USA, Inc.*, 523 F. Supp. 2d 376, 385 (S.D.N.Y. 2007) (press release, cease and desist letter, and Better Business Bureau Proceeding by defendant vodka marketer, importer, and distributor created controversy with plaintiffs, but controversy did not extend to defendant manufacturer of vodka).  Similarly, a prior lawsuit filed against third party competitors or even related parties does not necessarily create a substantial controversy for purposes of declaratory judgment jurisdiction, if a particular plaintiff itself was not named in that lawsuit. *Microsoft Corp. v. DataTern, Inc.*, 755 F.3d 899, 906-07 (Fed. Cir. 2014) (suits against users of

12

software did not necessarily show a case or controversy for a software manufacturer's declaratory judgment action); *Moore U.S.A. Inc. v. Standard Register Co.*, 2001 WL 34076423, at *2-3 (W.D.N.Y. 2001) (prior litigation against unrelated parties not relevant to current declaratory judgment claims).

Hachette's actions have been directed only to the current owner of the Application, concerning registration of the mark. Elle Moore has never owned the Application, and the Amended Complaint does not allege that it is involved with registration of the mark. Because Elle Moore cannot demonstrate a real and reasonable apprehension of suit, or existence of a case or controversy, it does not have standing to bring this declaratory judgment action. *See Maryland Cas. Co.*, 312 U.S. at 273.

### 2. Elle Sasson

Similarly, Elle Sasson cannot demonstrate the existence of a case or controversy between herself and Hachette, nor can she suggest that she has real, immediate and reasonable apprehension of liability.

Hachette's September 13, 2013 Letter was addressed to Elle and Maurice Sasson only because they were listed as the owners of the ELLE SASSON Application at the USPTO at the time the letter was mailed. Since the Letter, Hachette has not addressed the Sassons in their individual capacities, because they assigned ownership of the Application to Maga Team. Fechter Decl. at Ex. B. Indeed, Hachette filed the opposition proceeding concerning the Application against Maga Team, and negotiations regarding the opposition to the registration have been conducted with Maga Team's counsel. Because Hachette's actions have always been directed to the current owner of the Application, Elle Sasson, who is no longer an owner of the Application, cannot demonstrate real, immediate and reasonable apprehension of suit. *See id.*

Further, Elle Sasson's position as principal at Maga Team does not give her standing to bring suit. A role as an individual agent of a corporate trademark owner, even as a manager, does not confer standing to assert a declaratory judgment action. *See Enoch v. Enoch*, No. 3:04-0920, 2006 WL 1006648, at *3 (M.D. Tenn. Apr. 14, 2006) (corporate owner of trademark had standing to bring declaratory judgment action, but not its individual manager, because he did not assert sufficient interest in mark outside his role in corporation).

Because Elle Sasson is no longer the owner of the Application, and Hachette's actions implicate only the owner of the Application, Elle Sasson cannot demonstrate that she has standing to bring this declaratory judgment action.

## D. The Court Should Exercise Its Broad Discretion To Decline Jurisdiction

"The Declaratory Judgment Act confers on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants," even if jurisdiction exists. *Peconic Baykeeper, Inc. v. Suffolk Cty.*, 600 F.3d 180, 187 (2d Cir. 2010) (internal quotation and citations omitted); *Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.*, 819 F.2d 746, 747 (7th Cir. 1987) (stating a court has "discretion to decline to hear a declaratory judgment action" even if jurisdiction exists); *Vina Casa Tamaya*, 784 F. Supp. 2d at 397. In the Second Circuit, the following two criteria assist district courts in deciding whether to exercise discretion: "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, or (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Vina Casa Tamaya*, 784 F. Supp. 2d at 397 (quoting *Continental Cas. Co. v. Coastal Sav. Bank*, 977 F.2d 734, 737 (2d Cir. 1992)). However, the court's discretion is not "constricted or guided solely by these [] criteria." *Dow Jones & Co. v. Harrods, Ltd.*, 237 F. Supp. 2d 394, 433 (S.D.N.Y. 2002), *aff'd*, 346 F.3d 357 (2d Cir. 2003). Rather, a court "must look at the litigation situation as a whole in determining whether it is appropriate for

14

the Court to exercise its jurisdiction over the declaratory judgment action before it." *Great Am.*

*Ins. Co. v. Houston Gen. Ins. Co.*, 735 F. Supp. 581, 585 (S.D.N.Y. 1990) (citation omitted); *see*

*also Medimmune*, 549 U.S. at 118 (evaluating facts "under all circumstances" in jurisdiction

analysis).

The Court should decline to exercise jurisdiction here, because a declaratory judgment

would neither serve a useful purpose regarding the legal relations in issue, nor impact any

alleged uncertainty or controversy giving rise to Plaintiffs' Amended Complaint. As described

above, Plaintiffs delayed over a year from filing the opposition and a year and a half from

receiving Hachette's Letter to bring this suit, and at no time since September 13, 2013, when the

parties' communications commenced, has Hachette threatened litigation or filed any new

proceedings at any trademark office in the world. These facts do not suggest widespread

uncertainty and insecurity among the parties. "The plaintiff[s are] not in the position of one who

is threatened with legal proceedings but does not know when or where the blow will fall." *Topp-*

*Cola Co.*, 314 F.2d at 126. Indeed, Plaintiffs chose to launch the ELLE SASSON clothing line

in Spring 2014. Further, the parties are already engaged in an opposition proceeding at the

USPTO that ultimately will settle the parties' dispute over Plaintiffs' application for nationwide

rights for the ELLE SASSON mark. "The Declaratory Judgments Act may not be used simply to

remove a controversy from a forum where it properly belongs." *Id.*

The facts of this case do not satisfy either prong of the Second Circuit analysis for

entertaining a declaratory judgment action, and exercising jurisdiction over such a non-existent

and ill-defined dispute would waste the time and resources of both the parties and this Court.

Thus, this Court should dismiss this action for lack of subject matter jurisdiction.

**E.** **Dismissal Of Plaintiffs' Claims With Prejudice Is Warranted, Because Any Further Attempts At Pleading Would Be Futile**

Dismissal of Plaintiffs' claims should be with prejudice, as any amendment of those claims would be futile and only cause further delay and prejudice to Hachette. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (holding leave to amend should be liberally granted, unless "futility of amendment" renders it inappropriate to do so); *see also Leonelli v. Pennwalt Corp.*, 887 F.2d 1195, 1198 (2d Cir. 1989) (noting court need not permit the amendment of a complaint if doing so would be futile). In response to Hachette's February 11, 2015 letter detailing the basis for its anticipated motion to dismiss, Plaintiffs submitted a proposed amended complaint. Neither that proposed pleading, nor the Amended Complaint which includes additional factual allegations about the parties' settlement discussions, allege facts sufficient to support a finding that an actual controversy exists. If this Court finds that the allegations of the Amended Complaint are insufficient to give rise to an actual controversy, as Hachette respectfully submits that it should, there are no additional or different facts that Plaintiffs can allege to support subject matter jurisdiction in this Action.

Because the deficiencies in Plaintiffs' Amended Complaint cannot be cured, its claims against Hachette should be dismissed with prejudice.

## CONCLUSION

Because Plaintiffs' allegations fail to support an actual controversy, the Court should

grant Hachette's motion to dismiss for lack of subject matter jurisdiction.  In the alternative, this

Court should exercise its discretion to decline to exercise jurisdiction over this Action.

Dated: New York, New York
      January 20, 2016

                      McCARTER & ENGLISH, LLP

By: _____

                    Gary H. Fechter
                    Lori J. Shyavitz
                    245 Park Avenue, 27th Floor
                    New York, NY  10167
                    Tel: (212) 609-6800
                    Fax: (212) 609-6921
                    gfechter@mccarter.com
                    lshyavitz@mccarter.com

                    *Attorneys for Defendant*
                    *Hachette Filipacchi Presse SA*