**UNITED STATES DISTRICT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X
ELLE SASSON, MAGA TEAM (HONG KONG)
LTD., and ELLE MOORE & G. LLC.

                      Plaintiffs                   **ECF**

       V.                               Civil Action No: 15-cv-00194-(VM)

HACHETTE FILIPACCHI PRESSE d/b/a ELLE
MAGAZINE.

                      Defendant.
-----------------------------------------------------------------X

# MEMORANDUM OF LAW IN SUPPORT OF THE OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(1)

**GOTTLIEB, RACKMAN & REISMAN, P.C.**
**Attorneys for Plaintiff**
**George Gottlieb, Esq.**
**Marc Misthal, Esq.**
**Jonathan Purow, Esq.**
**270 Madison Avenue, 8th floor**
**New York, N.Y. 10016**
**Tel: (212) 684-3900**
**Fax: (212) 684-3999**

# TABLE OF CONTENTS

Page

INTRODUCTION ..................................................................................................................1

FACTUAL BACKGROUND ................................................................................................2

    ARGUMENT....................................................................................................................5

    I.  This Action Presents a Case or Controversy
        Capable of Conclusive Relief ...................................................................................5

        A. The Allegations of the Amended Complaint Are Presumed True ..................5

        B. The Court has Subject Matter Jurisdiction Under the Declaratory Judgment Act..........6

    II. Plaintiffs Elle Sasson and Elle Moore & G LLC Have Standing to Join in This
    Declaratory Judgment Action as Plaintiffs .................................................................10

    A.    Elle Sasson ............................................................................................................11

    B.    Elle Moore & G LLC ...........................................................................................14

    C.    The Inclusion of Ms. Sasson and Elle Moore & G LLC as
        Plaintiffs Does Not Prejudice Hachette ...................................................................14

CONCLUSION.....................................................................................................................15

# TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*Am. Pioneer Tours, Inc. v. Suntrek Tours, Ltd.*,
   1998 WL 60944 (S.D.N.Y. Feb. 13, 1998)..................................................................9

*Arris Group, Inc. v. British Telecomms. PLC*,
   639 F.3d 1368 (Fed. Cir. 2011)................................................................................10

*B&B Hardware, Inc., v. Hargis Industries, Inc.*,
   5 U.S. ___, 135 S.Ct. 1293, __L.Ed.2d __ (2015)..................................................10

*Continental Casualty Co. v. Coastal Sav. Bank*,
   977 F.2d 734 (2d Cir. 1992).......................................................................................6

*Classic Liquor Imps., Ltd. v. Spirits Int'l B.V.*,
   2015 U.S. Dist. LEXIS 172763 (S.D.N.Y. Dec, 29, 2015). .................................7, 8

*Donoghue v. Bulldog Investors Gen. P'ship*,
   696 F.3d 170 (2d Cir. 2012).......................................................................................5

*Dow Jones & Co., v. Harrods, Ltd.*,
   237 F. Supp. 2d  394, (S.D.N.Y 2002)....................................................................15

*Fort Howard Paper Co. v. William D. Witter Inc.*,
   787 F.2d 784 (2d Cir. 1986).......................................................................................6

*Gelmart Indus. v. Eveready Battery Co.*,
   2014 WL 1512036 (S.D.N.Y. Apr. 14, 2014).......................................................5, 8

*1-800 Flowers.com, Inc. v. Edible Arrangements, LLC*,
   905 F.Supp.2d 451 (E.D.N.Y. 2012) ........................................................................9

*Lee v. Makhnevich*,
   2013 WL 1234829 (S.D.N.Y. Mar. 27, 2013) ..........................................................8

*MedImmune, Inc. v. Genentech, Inc.*,
   549 U.S. 118 S. Ct. 765 (2007)................................................................................10

*Nike, Inc. v. Already, LLC*,
   663 F.3d 89 (2d Cir. 2011).....................................................................................8, 9

*Prasco, LLC v. Medical Pharm. Corp.*,
   537 F.3d 1329 (Fed. Cir. 2008)..................................................................................9

*Progressive Apparel Group, Inc. v. Anheuser-Busch, Inc.*,
  38 U.S.P.Q.2d 1057 (S.D.N.Y. Feb. 8, 1996) ................................................................... 10

*Sirius Satellite Research Inc. v. Acacia Research Corp*,
  2006 WL 238999 (S.D.N.Y. Jan. 30, 2006) ....................................................................... 9

*Sokolski v. Trans Union Corp.*,
  178 F.R.D. 393 (E.D.N.Y. 1998) .................................................................................... 15

*State Emps. Bargaining Agent Coal. v. Rowland*,
  494 F.3d 71, 77 n.4 (2d Cir. 2007) ................................................................................... 5

*Starter Corp. v. Converse, Inc.*,
  84 F.3d 592 (2d Cir. 1996) .............................................................................................. 6

*Sweet St. Deserts, Inc. v. Chudleigh's Ltd.*,
  2013 WL 1389760 (E.D.Pa. April 4, 2013) .................................................................... 10

*Topp-Cola Co. v. Coca-Cola Co.*,
  314 F.2d 124, 125 (2d Cir. 1963) ......................................................................... 6, 9, 10

*United Mine Workers v. Gibbs*,
  383 U.S. 715 (1966). ...................................................................................................... 11

*UBS Sec. LLC v. Finish Line, Inc.*,
  2008 WL 536616 (S.D.N.Y. Feb. 22, 2008) .................................................................. 15

*Vina Casa Tamaya S.A. v. Oakville Hills Cellar, Inc.*,
  784 F.Supp. 2d 391 (S.D.N.Y. 2011) ............................................................................... 9

**RULES**

Fed. R.Civ. P. 20 .................................................................................................................... 11

**STATUTES**

28 U.S.C. §2201 .................................................................................................................... 15

Plaintiffs Elle Sasson, Maga Team (Hong Kong) Ltd. ("Maga") and Elle Moore & G, LLC (collectively, "Plaintiffs") hereby submit their Opposition to the Motion to Dismiss the First Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(1) by defendant Hachette Filipacchi Presse SA ("Defendant" or "Hachette").  The declaration of Marc P. Misthal is submitted herewith.

## **INTRODUCTION**

After deciding to launch an eponymous fashion line, designer Elle Sasson (together with her father), filed a trademark application with the United States Patent and Trademark Office ("USPTO").  The USPTO approved the application and published it for opposition.  At that point, Hachette, the owner of the fashion magazine ELLE, sent Ms. Sasson a cease and desist letter.  The letter demanded that she stop use of her full name as a brand name and that she withdraw or amend her trademark application.  The letter explicitly threatened legal action, including the possibility of a lawsuit, if Ms. Sasson did not fully comply with the demands in the letter.  Negotiations ensued, and Hachette subsequently filed an opposition proceeding in the USPTO.  The negotiations, which related to the application and the commercial use of the mark, eventually failed, and at that point Plaintiffs filed this declaratory judgment action.  The action seeks a declaration that Ms. Sasson's use of her birth name as a trademark is not likely to cause confusion with Hachette's mark and, therefore, that the use of Ms. Sasson's full name as a trademark is not barred by and does not infringe Hachette's rights.  Notwithstanding Hachette's arguments to the contrary, this is a classic, well-recognized use of a declaratory judgment action--the resolution of threats relating to trademark use and registration.

**FACTUAL BACKGROUND**

    A. The ELLE SASSON Trademark Application

    On February 21, 2013, the designer Elle Sasson and her father Maurice Sasson jointly filed a trademark application for the mark ELLE SASSON in connection with clothing in Class 25, U.S. Application No. 85/855,981 (the "Application"). The Application was for the mark ELLE SASSON, in plain block letters, in the format in which names usually appear. *See* Defendant's Memorandum in Support of the Motion to Dismiss ("Defendant's Memo") (Docket No. 33), p. 3. The mark ELLE SASSON is the full birth name of plaintiff Elle Sasson. *See* Amended Complaint (Docket No. 29), Ex. A. The application was approved by the USPTO and published for opposition on August 27, 2013. Amended Complaint, ¶ 51; Fechter Declaration (Docket No. 34), Exhibit B.

    B. The September 13, 2013 Letter

    On or around September 13, 2013, Hachette sent a cease and desist letter (the "Letter") to the designer Elle Sasson and her father Maurice Sasson, demanding that the recipients withdraw the Application and cease all present and future use of the ELLE SASSON mark. *See* Amended Complaint, Exhs. M, N. In relevant part the letter stated:

> Such *use* and registration will mislead the consumer into conceiving an association or link between you and our client, and may take unfair advantage and or cause detriment to the reputation of our client's earlier mark ELLE and or may dilute the value of our client's famous trademark.
>
>                               \*\*\*
>
> Moreover, the consumer could be misled into believing that you are an authorized user and/or a licensee and/or an affiliated company or that there is some sort of arrangement with you.
>
> Consequently, the present letter serves to notify you that the registration *and the use of ELLE SASSON* is considered by our client as damaging its exclusivity to ELLE.

Of course, our client reserves any other legal qualification of facts that further information may reveal.

***

Immediately after receipt of the present letter, undertake formally and in writing, to cease all use and to never use in the future ELLE SASSON and/or any equivalent sign and/or any other sign confusingly similar to the trademark ELLE, whether as a trademark and/or a trade name and or a shop sign, and or a domain name, with your acknowledgment of our client's prior rights.

Effectively cease all use and to never use in the future: ELLE SASSON and or any equivalent sign and or any other sign confusingly similar to the trademark ELLE, whether as a trademark and/or a trade name and/or a shop sign and/ or a domain name.

Undertake, formally and in writing that all goods and/or all promotion and or international literature and signage with ELLE SASSON and or any other equivalent sign and/or any other sign confusingly similar to the trademark ELLE, will be destroyed and in any case will not be reused after the expiration of this deadline with the relevant evidence of this.

Your response is awaited at the latest within 20 days of the receipt of the present letter.

Please note that if no response is forthcoming within the above stipulated deadline, our client expressly reserves its right to take the appropriate measures including, where necessary, instituting legal proceedings and or opposition proceedings (emphases added throughout).

The Letter references *use* of ELLE SASSON in at least seven different places, and in no less than three instances it reserves Hachette's right to file a lawsuit if the demands in the letter are not met. Put simply, and contrary to Hachette's efforts to portray the letter as benign and conciliatory, the letter was nothing less than a direct and concrete threat from a large multinational corporation to a company and a designer who were just starting out in the fashion world: comply with our demands or be sued.

C. Settlement Discussions, the Opposition Proceeding and the Filing of this Action

From the time of the Letter, the parties engaged in settlement negotiations that Hachette admits involved "issues of both registration and use of the ELLE SASSON mark". Defendant's Memo, p. 4; Amended Complaint, ¶¶ 44-50. Of particular importance here, ███████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ Amended Complaint, ¶ 47. ████████████████████████████████████████ ████; at no point has Hachette withdrawn the Letter or the ██████████████.

Hachette filed an opposition to the Application on February 24, 2014 (the "Opposition"), allegedly "in order to preserve its rights at the USPTO". *See* Amended Complaint, ¶ 52; Defendant's Memo, p. 8. During the opposition proceeding, Hachette served discovery requests which, by Defendant's own admission, "related to issues of both registration and use of the ELLE SASSON Mark". Defendant's Memo, p. 5.

████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
██████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
██████████████████████████████████████[1]

---

[1] ████████████████████████████████████████████████████████████

4

The settlement negotiations failed in December 2014. Defendant's Memo at p.4.; Amended Complaint, ¶ 65. At no point did Defendant contradict or retract the cease and desist letter or the ▇▇▇▇▇▇▇▇. Plaintiffs filed this action shortly after the close of settlement talks, seeking a judicial determination regarding whether their use of the ELLE SASSON mark infringed or diluted Defendant's ELLE marks. Thereafter, the USPTO suspended the opposition proceeding pending the disposition of this action, recognizing that "the outcome of the civil action could potentially have a bearing on, at a minimum, applicant's rights in, and specifically its right to use, the ELLE SASSON mark." Amended Complaint, ¶ 54. As the Court is aware, settlement discussions began again a few months after the filing of this action. *See* Docket No. 10.

## ARGUMENT

**I. This Action Presents a Case or Controversy Capable of Conclusive Relief**

A. The Allegations of the Amended Complaint Are Presumed True

"Courts weighing a Rule 12(b)(1) motion 'borrow from the familiar Rule 12 (b)(6) standard, construing the complaint in plaintiff's favor and accepting as true all material factual allegations contained therein.'" *Gelmart Indus. v. Eveready Battery Co.*, 2014 WL 1512036, at *2 (S.D.N.Y. Apr. 14, 2014) (quoting *Donoghue v. Bulldog Investors Gen. P'ship*, 696 F.3d 170, 173 (2d Cir. 2012). However, in considering a Rule 12 (b)(1) motion, a "district court may resolve disputed factual issues by reference to evidence outside the pleadings, including affidavits." *State Emps. Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 77 n.4 (2d Cir. 2007).

---

▇▇▇▇▇▇ to establish liability, Federal Rule of Evidence 408 does not bar its use. Rule 408 bars the use of statements made during settlement discussions only when those statements are asserted to establish liability or the invalidity of a claim or its amount. Fed. R. Evid. 408. See <u>PRL USA Holdings, Inc. v. U.S. Polo Ass'n, Inc.</u>, 520 F.3d 109 (2d Cir. 2008) (affirming admission of evidence from settlement discussion to support defense of estoppel).

Thus, the factual allegations of the Amended Complaint are presumed to be true, since they have not been controverted by Hachette in its motion papers, and, in fact, are supported by the declaration submitted herewith on behalf of Plaintiffs.

B.  The Court has Subject Matter Jurisdiction Under the Declaratory Judgment Act

1.  The Declaratory Judgment Act Grants Jurisdiction to Cases Like the One at Bar

In the Second Circuit, courts are required to hear declaratory judgment actions "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, or (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Continental Casualty Co. v. Costal Sav. Bank*, 977 F.2d 734, 737 (2d Cir. 1992).  "The Declaratory Judgment Act is designed precisely for situations like these where a party is put on notice by another that it may be infringing the noticing party's rights and seeks to 'clarify[] and settl[e] the legal relations in issue,'" as well as "relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Fort Howard Paper Co. v. William D. Witter Inc.*, 787 F.2d 784, 790 (2d Cir. 1986).  *See Topp-Cola Co. v. Coca-Cola Co.*, 314 F.2d 124, 125 (2d Cir. 1963).  Indeed, declaratory judgment actions are particularly useful in resolving trademark disputes where, as here, a trademark owner threatens to sue for infringement.  *Starter Corp. v. Converse, Inc.*, 84 F.3d 592, 596 (2d Cir. 1996).  Furthermore, the Second Circuit has stated that in trademark cases courts should be liberal in determining whether there is a case or controversy.  *Id.*

2.  This Case Presents a Case or Controversy Which can be Resolved by a Court Declaration

Consideration of the facts of this case establishes the existence of a case or controversy capable of resolution through a declaration by the Court; thus, subject matter jurisdiction is

6

proper. As set forth above, Hachette's September 2013 cease and desist letter made an unambiguous threat: comply with our demands or we will sue you. Hachette has never withdrawn that letter or the threat it contains. Rather, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

This case is virtually identical to the case before Judge Rakoff in *Classic Liquor Imps., Ltd. v. Spirits Int'l B.V.,* 2015 U.S. Dist. LEXIS 172763, 15 Civ. 6503 (JSR) (S.D.N.Y. Dec. 29, 2015).[2] Spirits International ("SPI") sent Classic Liquor a notice letter alleging "that Classic Liquor's proposed use of the ROYAL ELITE mark in connection with liquor and beverage products would infringe SPI's United States trademarks." After an initial exchange of letters, Classic Liquor filed a declaratory judgment action. SPI also opposed Classic Liquor's pending trademark application, but that proceeding was ultimately stayed pending the disposition of the declaratory judgment action. SPI then sought to dismiss two counts of the amended complaint; as to one of the counts, SPI claimed that the court lacked subject matter jurisdiction because there was no case or controversy. In support of its argument, SPI pointed to a post-litigation letter to Classic Liquor where is claimed it did not have a present intention to sue Classic Liquor for infringement and that it had no such intention when it sent its initial notice letter. Judge Rakoff was not persuaded. He pointed out that the initial notice letter, which stated that SPI would "vigorously protect its trademarks" was a "clear threat of future litigation" which SPI had never withdrawn. Accordingly, Judge Rakoff found subject matter jurisdiction and refused to dismiss that claim.

In its motion papers (Defendant's Memo, pp. 5, 8, 11, 15) and correspondence to the court (Docket No. 40, p. 2), Hachette alleges that, other than filing the opposition proceeding

---

[2] A Westlaw citation is not currently available for this case. For the Court's convenience, a copy of this decision is attached to the Misthal Declaration.

before the USPTO, it has not taken action to stop Plaintiffs from using ELLE SASSON, and that Plaintiffs are currently selling their ELLE SASSON products. As Judge Rakoff recognized, this is not determinative of the question of whether the Court has subject matter jurisdiction over this case. Hachette never rescinded the threat made in the Letter ███████████████. "[S]imply holding litigation in abeyance…does not eliminate the case or controversy." *Nike, Inc. v. Already, LLC*, 663 F.3d 89, 96 (2d Cir. 2011), *aff'd* 568 U.S.__, 133 S.CT. 721, 184 L.Ed.2d 553 (2013). "To state the obvious, the declaratory judgment procedure would be pointless in this context if a party had to wait to be sued for infringement before seeking a declaratory judgment of non-infringement." *Classic Liquor* at *17. *See also Lee v. Makhnevich, 2013 WL 1234829*, at *4 (S.D.N.Y. Mar. 27, 2013) ("Defendants cannot pretend now that their notices to [plaintiff] were 'just kidding,' or that [plaintiff] lacked any reasonable apprehension of liability."); *Gelmart*, at *4 (denying motion to dismiss declaratory judgment action for lack of subject matter jurisdiction where defendant had "in sum and substance[] asserted that the proposed . . . mark is infringing and dilutive" in a cease and desist letter).

Despite all of Hachette's efforts to point out what action it has not taken in the past, it has *never* stated that it will not take *future* action regarding the manner in which Plaintiffs use ELLE SASSON. In fact, in advance of a January 29, 2016 telephone conference with Judge Marrero, Plaintiffs sent a letter to the Court inviting Hachette to represent to the Court that it would not take further action regarding Plaintiffs' use of ELLE SASSON as displayed on Plaintiffs' website, in which case Plaintiffs would agree that Hachette's statement divested the Court of subject matter jurisdiction. Docket No. 42. Although Judge Marrero discussed Plaintiffs' letter during the teleconference, Hachette did not accept Plaintiffs' invitation. In the absence of any representation regarding future litigation, Hachette cannot assert that its failure to act divests the

8

Court of subject matter jurisdiction. *See Nike, Inc. v. Already, LLC*, 663 F.3d 89 (2d Cir. 2011) (affirming dismissal of declaratory judgment action for lack of subject matter jurisdiction where covenant not to sue covered past *and* future conduct).

    3.  Hachette's Position That No Declaratory Judgment Jurisdiction Exists Lacks Legal Support

The cases cited by Hachette do not support its position. As noted above, Hachette sent a cease and desist letter which explicitly threatened litigation absent compliance with its demands; subsequently, Hachette filed an opposition proceeding in the USPTO. Nevertheless, Hachette relies on cases where there was no threat of litigation. *See Am. Pioneer Tours, Inc. v. Suntrek Tours, Ltd.*, 1998 WL 60944 (S.D.N.Y. Feb. 13, 1998) (dismissing declaratory judgment action where defendant filed opposition proceeding and there was no dispute defendant had not threatened litigation); *Topp-Cola Co. v. Coca-Cola Co.*, 314 F.2d 124 (2d Cir. 1963) (no subject matter jurisdiction where notice of opposition was filed and no threat of litigation was made); *1-800 Flowers.com, Inc. v. Edible Arrangements, LLC*, 905 F.Supp.2d 451 (E.D.N.Y. 2012) (no subject matter jurisdiction where defendant only filed notice of opposition and did not threaten litigation). Other cases cited by Hachette involve pre-suit letters which, in contrast to the letter sent by Hachette, lacked any threat of litigation or did not object to use. *See Prasco, LLC v. Medical Pharm. Corp.*, 537 F.3d 1329 (Fed. Cir. 2008) (dismissing declaratory judgment action where defendant did not threaten litigation or accuse plaintiff of infringement); *Vina Casa Tamaya S.A. v. Oakville Hills Cellar, Inc.*, 784 F.Supp. 2d 391 (S.D.N.Y. 2011) (dismissing action where plaintiff used mark for more than seven years without interference and defendant's pre-suit letter only objected to registration of mark, not use); *Sirius Satellite Research Inc. v. Acacia Research Corp,* 2006 WL 238999 (S.D.N.Y. Jan. 30, 2006) (dismissing action where pre-

suit letter invited discussions and subsequent correspondence did not threaten litigation if no response was received by a deadline); *Progressive Apparel Group, Inc. v. Anheuser-Busch, Inc.*, 38 U.S.P.Q.2d 1057 (S.D.N.Y. Feb. 8, 1996) (dismissing action where pre-suit letter only objected to registration and not use).[3]

## II. Plaintiffs Elle Sasson and Elle Moore & G LLC Have Standing to Join in This Declaratory Judgment Action as Plaintiffs

In the context of a declaratory judgment action, a specific threat of infringement litigation is not required to establish jurisdiction. *See Arris Group, Inc. v. British Telecomms. PLC*, 639 F.3d 1368, 1379 (Fed. Cir. 2011) (finding subject matter jurisdiction in declaratory judgment action brought by supplier when patent owner directed notice letter to plaintiff's customer); *Sweet St. Deserts, Inc. v. Chudleigh's Ltd.*, 2013 WL 1389760 (E.D.Pa. April 4, 2013) (finding subject matter jurisdiction where defendant sent notice letter to third party but not plaintiff). Such a requirement would be inconsistent with the Supreme Court's ruling that courts assessing the existence of a case or controversy should examine the facts alleged, under all the circumstances. *MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 127, 127 S. Ct. 765 (2007). Nevertheless, Hachette contends that because it did not direct its actions to Ms. Sasson and Elle Moore & G LLC, they do not have standing to join in this declaratory judgment action. Defendant's Memo, p. 12. This misstates the facts and the law.

---

[3] Some of the cases cited by Hachette, such as *Progressive Apparel Group* and *Topp-Cola Co.*, find that a letter that alleges a likelihood of confusion but does not specifically threaten litigation does not give rise to a case or controversy, since a likelihood of confusion is relevant in determining eligibility to register and mark and infringement. In view of the Supreme Court's decision in *B&B Hardware, Inc. v. Hargis Industries, Inc.*, 575 U.S. ___, 135 S.Ct. 1293, __L.Ed.2d __ (2015), holding that a court should give preclusive effect to decisions of the Trademark Trial and Appeal Board of the USPTO, which hears opposition proceedings, "if the ordinary elements of issue preclusion are met," it is unclear as to whether the distinction between litigation and opposition proceedings drawn in the cited cases survives.

The Federal Rules permit parties to join in one action as plaintiffs if there is a question of law or fact common to all plaintiffs and they assert any right to relief jointly. Fed. R. Civ. P. 20 (a)(1). Joinder of appropriate parties is strongly encouraged so that common issues may be addressed in a single action. *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966). Thus, the question is whether Hachette's actions threatened Ms. Sasson and Elle Moore & G LLC, not whether Hachette directed its actions towards them. As alleged in the Amended Complaint, all three plaintiffs are invested in the common and central question of whether the ELLE SASSON mark infringes or dilutes Defendant's ELLE mark. Amended Complaint, ¶¶ 2, 7, 9, 11. Ms. Sasson is the public face of the ELLE SASSON brand and is the designer of apparel bearing the ELLE SASSON name. Amended Complaint, ¶¶ 15-17. Elle Moore & G LLC imports and distributes ELLE SASSON branded clothing in the United States. Amended Complaint, ¶ 18. As the September 2013 cease and desist letter sent by Hachette threatened litigation if use of ELLE SASSON did not cease and if promotional materials bearing ELLE SASSON were not destroyed, Hachette's actions threatened Ms. Sasson and Elle Moore & G LLC.

   A. Elle Sasson

Elle Sasson seeks to use her *birth name* as the brand name of a line of clothes that she designs, in an industry where luminaries such as Calvin Klein, Diane von Furstenberg and Michael Kors have made this common practice. In spring 2014, the first line of ELLE SASSON brand clothing was launched under the direction and guidance of Ms. Sasson. Amended Complaint, ¶ 17. Ms. Sasson is the creator and personal representative of her brand, as evidenced by the following articles in the fashion press:

- Refinery29, the largest independent fashion and style website in the Unites States, in an article entitled "New Designer Crush! An NYC Line We'll Wear All Spring" stated that

- they were "already kind of die-hard fans" of "new-to-the-scene NYC designer Elle Sasson", a "new It designer." Amended Complaint, Ex. C

- Style.com stated that "Elle Sasson strikes a balance" and lauded her for her "razor-sharp focus." The article said that "Sasson, the daughter of eighties denim proprietor Maurice Sasson" is "certainly one to watch". Amended Complaint, Ex. D

- The Zoe Report, the website of famed fashion stylist and reality television star Rachel Zoe, in an article entitled "Obsessed: Elle Sasson's LA-Inspired Collection," said that the "up-and-coming Designer" Ms. Sasson's "namesake line features ultra-cool cuts with a feminine, California-inspired twist we're dying to get our hands on." "Not only do we adore her ready to wear line, Elle's success is pretty inspiring, too! Her residency in Hong Kong teamed with tips from her father (who is also in the industry), among years of hard work and determination contribute to young Elle's triumph as a fashion designer". Amended Complaint, Ex. E.

- The fashion magazine Teen Vogue, in an article entitled "Palm Trees? Yes Please! Why Elle Sasson is the New Label We Love," and subtitled "We're crushing hard on the NYC-based designer's debut collection," stated "Count us among the young designer's super-fans". The article also said that "up-and-comer Elle Sasson" "dropped out of school to forge ahead with her brand-new namesake label". Amended Complaint, Ex. F.

- Women's Wear Daily, on information and belief the most prominent daily fashion publication in the U.S., featured Elle Sasson for a "New Designer Profile." The article stated: "Elle Sasson, the 25-year-old daughter of Sasson Jeans and Kikit creator Maurice Sasson, is charting new territory with her own label." Amended Complaint, Ex. G.

- The fashion magazine Nylon, in a blurb in its April 2014 print version entitled "palm d'or," stated "Elle Sasson's very first collection is full of everything we want to wear right this minute". Amended Complaint, Ex. H.

Ms. Sasson filed the Application in conjunction with her father to register her own name as a trademark. Hachette subsequently addressed the Letter, and its threats of litigation, to Ms. Sasson and her father Maurice Sasson. Amended Complaint, ¶¶ 41-42, 51.

Although the September 2013 letter was addressed to Ms. Sasson and her father, Hachette contends that all of its adversarial actions have been directed to the owner of the trademark application, and its dispute with Ms. Sasson therefore terminated as soon as she assigned the trademark application to Maga. Defendant's Memo, p. 13. Hachette's argument lacks support. Hachette does not point to any communication in which it stated that the Letter and its threats were no longer directed at Elle Sasson as an individual. ███████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████

Hachette unambiguously directed its actions toward Ms. Sasson, as evidenced by the Letter and the ████████████████████████. Hachette cannot now be heard to claim that it did not mean what it said. Whether or not Elle Sasson owns the actual trademark

13

application at issue, her interest in the outcome of this litigation remains the same, as it implicates how she uses her own name in commerce.

B. Elle Moore & G LLC

Elle Moore & G LLC is the primary entity responsible for all business related to the ELLE SASSON brand clothing in the United States. The company controls and oversees importation, distribution and sales activities for the brand in the fashion marketplace, and imports and distributes ELLE SASSON branded clothing in the United States. Amended Complaint, ¶¶ 11, 18. Any controversy that involves the use of the ELLE SASSON mark on clothing inherently involves Elle Moore & G LLC.

As has been previously noted, Hachette's September 2013 cease and desist letter threatened litigation if use of ELLE SASSON did not stop. Elle Moore & G LLC controls use of the mark. Hachette presumably did not include Elle Moore & G LLC in the dispute prior to this action because Hachette was unaware of it. Hachette foresaw, though, that it was not familiar with all of the users of ELLE SASSON. ███████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████

████████████ Hachette cannot claim it did not really mean what it said and evade the consequences of its actions.

C. The Inclusion of Ms. Sasson and Elle Moore & G LLC as Plaintiffs Does Not Prejudice Hachette

Each of the Plaintiffs is actively invested in the ELLE SASSON mark. Elle Sasson is a personal ambassador who is effectively interchangeable with the mark, and Elle Moore & G LLC is primarily responsible for the use of the ELLE SASSON mark. Hachette cannot claim

14

that its dispute is not with Elle Sasson and Elle Moore & G LLC when it attempted to ▮

▮

If this action proceeds, Hachette would not suffer any prejudice as a result of the inclusion of Ms. Sasson and Elle Moore & GLLC as plaintiffs. *See Sokolski v. Trans Union Corp.*, 178 F.R.D. 393, 398 (E.D.N.Y. 1998) ("Where the asserted claims of the proposed additional plaintiffs are identical to those of the original plaintiff and arise from the same conduct, defendants will not be prejudiced in defending their claims.")

If Ms. Sasson and Elle Moore & G LLC are dismissed from this action, their exclusion could significantly prejudice Plaintiffs. Hachette could bring a future suit against the excluded party, in an effort to harass Plaintiffs or intimidate them into a different result than is reached in this proceeding. This would undermine the purpose of the Declaratory Judgment Act, which states that any "declaration shall have the force and effect of a final judgment or decree." 28 U.S.C. §2201. One of the primary purposes of declaratory relief is to promote efficiency — <u>i.e.</u>, to allow "one action to define the legal relationships and adjust the attendant rights and obligations at issue between the parties." *Dow Jones & Co., Inc. v. Harrods, Ltd.*, 237 F. Supp. 2d 394, 405 (S.D.N.Y. 2002); *UBS Sec. LLC v. Finish Line, Inc.*, 2008 WL 536616, at *3 (S.D.N.Y. Feb. 22, 2008) (Declaratory Judgment Act is designed to "avoid multiplicity of actions"). Hachette should not be permitted to subvert that purpose.

## CONCLUSION

Contrary to Hachette's assertions, subject matter jurisdiction is present in this action as Hachette sent a cease and desist letter that threatened legal action if use and registration of ELLE SASSON did not cease. Hachette, which followed its notice letter with the filing of an opposition proceeding, has never withdrawn the notice letter or the ▮ and has

refrained from stating that it will not take future action regarding the manner in which Plaintiffs use ELLE SASSON.  Moreover, as Elle Sasson and Elle Moore & G LLC are both involved in the use of ELLE SASSON, they are proper parties to this action.  This is the case despite Hachette's legerdemain in trying to convince the Court otherwise.

    For the reasons set forth herein, Plaintiffs respectfully request that the Court deny Hachette's motion in its entirety.

                                                    Respectfully submitted,

                                                    GOTTLIEB, RACKMAN & REISMAN, P.C.
George Gottlieb (GG5761)
Marc P. Misthal (MM6636)
Jonathan Purow (JP0052)
Attorneys for Plaintiffs
270 Madison Avenue
New York, New York 10016
(212) 684-3900


By:     /Marc P. Misthal/
Marc P. Misthal (MM 6636)

Dated:        February 3, 2016
                  New York, New York