UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

ELLE SASSON, et al.,

                              Plaintiffs,            15-CV-00194 (VM)(SN)

     -against-                 **OPINION & ORDER**

HACHETTE FILIPACCHI PRESSE,

                              Defendant.

-----------------------------------------------------------------X

**SARAH NETBURN, United States Magistrate Judge:**

     Defendant Hachette Filipacchi Presse moves under Federal Rule of Civil Procedure 12(b)(1) to dismiss this declaratory judgment action. According to Hachette, the plaintiffs have not pleaded a case or controversy, as required by Article III of the U.S. Constitution, and two of the plaintiffs lack standing to sue.

     The motion is denied. The plaintiffs plausibly alleged that the parties have adverse legal interests and a definite and concrete dispute that can be resolved through this action. The defendant threatened to sue the plaintiffs because their use of the trademark ELLE SASSON allegedly infringes and dilutes the defendant's trademark ELLE. But the defendant has not sued for damages, leaving the plaintiffs' legal rights uncertain. The Declaratory Judgment Act authorizes the Court to resolve this uncertainty. Plaintiffs Elle Sasson and Elle Moore & G, LLC, both use the ELLE SASSON mark in commerce and have standing to determine whether their use has infringed or diluted the defendant's mark. The Court also orders that the sealed pleadings, exhibits, and motions should be unsealed.

**BACKGROUND**

Fashion designer Elle Sasson's name resonates in her industry. She shares her surname with her father, the renowned jeans designer Maurice Sasson. And she shares her given name with ELLE, Hachette's fashion magazine and lifestyle company. This dispute concerns whether the trademark ELLE SASSON infringes or dilutes the famous trademark ELLE.

In February 2013, through plaintiff Maga Team (Hong Kong) Ltd., Sasson applied to use the trademark ELLE SASSON with the U.S. Patent and Trademark Office (PTO). An initial PTO examination did not find any conflicting marks that would bar registration.

On September 13, 2013, counsel for Hachette sent a cease and desist letter, addressed personally to the Sassons, contending that the proposed ELLE SASSON mark could cause consumer confusion and dilute the ELLE mark. Hachette made several specific demands, including the demand that Sasson cease using the mark:

> Immediately after the receipt of the present letter, undertake formally and in writing to withdraw the trademark ELLE SASSON no. 85855981 and/or to amend your trademark application to ELLESASSON without spaces and without the term *ELLE* being highlighted (typeface, size or color of letters, capital letter . . . ) with the relevant evidence of this.
>
> Immediately after receipt of the present letter, undertake formally and in writing, to cease all use and to never use in the future ELLE SASSON and/or any equivalent sign and/or any other sign confusingly similar to the trademark ELLE, whether as a trademark and/or a trade name and or a shop sign, and or a domain name, with your acknowledgement of our client's prior rights.
>
> Immediately, after the receipt of the present letter, if you decide to amend your trademark application to ELLESASSON, undertake formally and in writing to always use the trademark ELLESASSON i.e., only in the form of an indivisible whole, in which the terms "ELLE" and "SASSON" are to be presented as one word without spaces, and without the term "ELLE" being highlighted in any manner whatsoever in terms of its size, color, lettering, capital letter

> . . . and under a device which is neither identical nor similar to the ELLE device.
>
> [. . .]
>
> Effectively cease all use and to never use in the future: ELLE SASSON and or any equivalent sign and or any other sign confusingly similar to the trademark ELLE, whether as a trademark and/or a trade name and/or a shop sign and/or a domain name.
>
> Undertake, formally and in writing that all goods and/or all promotional and or international literature and signage with ELLE SASSON and or any other equivalent sign and/or any other sign confusingly similar to the trademark ELLE, will be destroyed and in any case will not be reused . . . with the relevant evidence of this.

Amended Compl., Ex. M. Hachette reserved the right "to take appropriate measures including, where necessary, instituting legal proceedings and or opposition proceedings." Id.

The parties began settlement negotiations, but made little progress. On February 24, 2014, Hachette formally challenged Maga Team's PTO application by filing an opposition with the Trademark Trial and Appeal Board (TTAB).

In spring 2014, despite the unresolved trademark dispute, the plaintiffs released their first clothing line under the brand name ELLE SASSON. Elle Sasson designed the clothes, and Plaintiff Elle Moore & G LLC, a company controlled by Sasson, marketed the line. The brand received positive press coverage, appeared on the cover of People Magazine, sold to high-end U.S. retailers and fashion websites, and entered international markets.

Meanwhile, halting settlement negotiations continued with Hachette. On August 19, 2014, Hachette's counsel threatened that if the plaintiffs did not modify their brand labels or stop using their brand name, "then unfortunately, my client is going to fight you [until] the end." Amended Compl. at ¶ 47. In September 2014, Hachette sent a draft settlement agreement, which imposed use restrictions on both Maga Team and Elle Sasson personally. The agreement

included a requirement that Elle Sasson never use the word ELLE by itself and would have bound both Maga Team and Sasson to undertake to have its terms respected by all authorized users of their mark. The plaintiffs rejected the settlement, and negotiations faltered.

In December 2014, the parties resumed litigation before the TTAB, and, on January 12, 2015, the plaintiffs brought this action for a declaratory judgment. Proceedings in the TTAB have been stayed. Following extensive but fruitless court-supervised settlement negotiations, Hachette moved to dismiss the plaintiffs' amended complaint for lack of jurisdiction. The parties consented under 28 U.S.C. § 636(c) to my jurisdiction for the limited purpose of deciding this motion.

## DISCUSSION

### I. Standard of Review

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." Aurecchione v. Schoolman Transp. Sys., Inc., 426 F.3d 635, 638 (2d Cir. 2005). When evaluating a Rule 12(b)(1) motion, "the court must take all facts alleged in the complaint as true." Natural Res. Def. Council v. Johnson, 461 F.3d 164, 171 (2d Cir. 2006). But "jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." Shipping Fin. Servs. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998). The court "may resolve disputed factual issues by reference to evidence outside the pleadings," including affidavits and documents. State Emps. Bargaining Agent Coal. v. Rowland, 494 F.3d 71, 77 n.4 (2d Cir. 2007).

## II.  Subject Matter Jurisdiction Under the Declaratory Judgment Act

### A.  Case of Actual Controversy

Under the Declaratory Judgment Act, in "a case of actual controversy," a district court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The Declaratory Judgment Act did not expand the scope of federal subject matter jurisdiction. The phrase "case of actual controversy" limits declaratory judgment jurisdiction "to the type of 'Cases' and 'Controversies' that are judiciable under Article III" of the U.S. Constitution. MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007). "A justiciable controversy" is not "a difference or dispute of a hypothetical or abstract character." Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240 (1937). It must be "definite and concrete, touching the legal relations" of parties with "adverse legal interests" and it must "admit of specific relief through a decree of a conclusive character as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." MedImmune, 549 U.S. at 127 (alteration and internal quotation marks omitted). A court looks to the totality of the circumstances when determining whether a controversy is justiciable. Id.

In Starter Corp. v. Converse, Inc., the Court of Appeals established a two-prong test for determining whether a trademark dispute presented an actual case or controversy. The plaintiff had to show that it held "a real and reasonable apprehension of liability" and had "engaged in a course of conduct which brought it into adversarial conflict with the defendant." 84 F.3d 592, 595-96 (2d Cir. 1996). But MedImmune definitively rejected the first prong of the Starter test. See MedImmune, 549 U.S. 130-32. In doing so, MedImmune "lowered the threshold" in the Second Circuit "for proving the existence of such controversies." AARP v. 200 Kelsey Assocs.,

LLC, 06-cv-81 (SCR) 2009 WL 47499, at *6 (S.D.N.Y. Jan. 8, 2009) (Lynch, J.). The "threat of future litigation," however, "remains relevant in determining whether an actual controversy exists." Nike, Inc. v. Already, LLC, 663 F.3d 89, 96 (2d Cir. 2011).

Viewed under the totality of the circumstances, the amended complaint pleaded an actual controversy. The plaintiffs sell clothing under the brand name ELLE SASSON, which they have registered as a trademark with the PTO. In a September 2013 cease and desist letter, and persistently thereafter, including in settlement negotiations and in a TTAB opposition action, Hachette has claimed that the use of the ELLE SASSON mark infringes and dilutes the ELLE mark. The parties undoubtedly have "adverse legal interests": competing trademark claims. The dispute is "definite and concrete" because the plaintiffs use the ELLE SASSON mark in commerce and Hachette would like to end, or at least sharply restrict, that use. And the Court can issue a "decree of a conclusive character" that would draw the dispute to a close by deciding whether ELLE SASSON infringes or dilutes the ELLE trademark.

Hachette argues that there is no actual controversy because it never explicitly threatened to sue. But an immediate threat of suit is no longer a prerequisite to subject matter jurisdiction in a declaratory judgment action. See Nike, 663 F.3d at 96; MedImmune, 549 U.S. 130-32. And, while the Court may still consider an immediate threat or suit as evidence of a case or controversy, the plaintiffs have alleged that Hachette actually threatened legal action. In the September 2013 cease and desist letter, Hachette set forth in detail its case that the ELLE SASSON mark could cause consumer confusion with the ELLE mark and demanded, among other things, that the Sassons "cease all use" of the mark, "never" use it "in the future," and "destroy" any labels bearing it. Amended Compl., Ex. M. The letter advised that a failure to comply could lead to legal proceedings. Id. Hachette's claim that this language does not threaten

suit is unpersuasive. The implication of the letter could not be plainer: Meet our demands or we will sue. But even assuming that the cease and desist letter did not threaten suit, the letter at least established that the parties have "adverse legal interests" over the use of the mark sufficient to establish a case or controversy. Further, Hachette made a second threat in August 2014 when it warned the plaintiffs that if they continued using the mark, Hachette would "fight" until "the end." Amended Compl. at ¶ 47. Hachette claims that this email refers only to fighting to "the end" of the PTO proceedings. But the email makes no explicit reference to those proceedings, and, read in the context of the earlier communications, threatens eventual legal action.

  Hachette also claims that the TTAB, not this Court, should hear this dispute. According to Hachette, it seeks only to oppose the *registration* of the plaintiffs' mark, not its *use*. The TTAB is the proper authority to adjudicate registration claims, and there is no basis for declaratory judgment jurisdiction. Federal courts do lack declaratory judgment jurisdiction where "the defendants do not object to the plaintiff's current use of the mark" and the only "immediate and definite controversy is over the registration of that mark." Bruce Winston Gem Corp. v. Harry Winston, Inc., 09-cv-7352 (JGK), 2010 WL 3629592, at *5 (S.D.N.Y. Sept. 16, 2010); see also 1-800-Flowers.com, Inc. v. Edible Arrangements, LLC, 905 F. Supp. 2d 451, 456 (E.D.N.Y. 2012) ("the filing of an opposition in a registration proceeding, alone" does not present an actual controversy); Progressive Apparel Grp., Inc. v. Anheuser-Busch, Inc., 95-cv-2794 (DLC), 1996 WL 50227, at *4 (S.D.N.Y. Feb. 8, 1996) ("The present dispute concerns only the registration of a trademark. There is no threat of an infringement suit, either direct or indirect, and there is no reasonable basis on which to conclude that this dispute will eventually develop into an infringement suit."). But that is not the case here. Hachette has consistently disputed both the trademark registration and the plaintiffs' use of the mark in commerce, and it has not withdrawn

the threats made in September 2013 and August 2014. Hachette cannot now disavow those prior threats or edit them out of the settlement negotiations. See, e.g., Classic Liquor Imps., Ltd. v. Spirits Int'l B.V., 15-cv-6503 (JSR), 2015 WL 9487886, at *4 (S.D.N.Y. Dec. 29, 2015) ("Defendant is not entitled to argue, after taking action that compelled plaintiff to sue to clarify its rights vis-à-vis defendant, that it did not really mean what it said in its May 5 letter."); Gelmart Indus., Inc. v. Eveready Battery Co., 120 F. Supp. 3d 327, 332 (S.D.N.Y. 2014) (where a cease and desist letter set out the elements of a trademark infringement and dilution claim, plaintiff established an actual controversy); Lee v. Makhnevich, 11-cv-8665 (PAC), 2013 WL 1234829, at *4 (S.D.N.Y. Mar. 27, 2013) ("Defendants cannot pretend now that their notices . . . were 'just kidding'" or that the plaintiff "lacked any reasonable apprehension of liability.").

In a similar vein, Hachette argues that any threats have "dissipated" because Hachette did not actually sue the plaintiffs for infringement. But "simply holding litigation in abeyance" does not "eliminate the case or controversy." Nike, 663 F.3d at 96. The very purpose of the Declaratory Judgment Act is to provide a procedural means for a plaintiff to determine whether it is liable for its conduct *before* the defendant asserts its rights. See, e.g., American Mach. & Metals v. De Bothezat Impeller Co., 166 F.2d 535, 536 (2d Cir. 1948) ("The very purpose of the declaratory judgment procedure is to prevent the accrual" of "avoidable damages.") (Swan, J.). Hachette may have strategic reasons for withholding suit, but it has not covenanted *not* to sue, and the controversy persists. Cf. Nike, 663 F.3d at 96 (setting forth the factors for determining whether a consent not to sue eliminates a justiciable controversy).

Hachette supports its dissipation theory with case law from this district, but the Court is not persuaded. In Sirius Satellite Research, Inc. v. Acacia Research Corp., 05-cv-7495 (PAC), 2006 WL 238999 (S.D.N.Y. Jan. 30, 2006), the court concluded that allegations of infringement

without an explicit threat to sue do not present a case or controversy. But <u>Sirius</u> predated <u>MedImmune</u>, and its analysis relied heavily on the discredited "reasonable apprehension" test. <u>MedImmune</u> and subsequent case law have undermined its holding. <u>See, e.g.</u>, <u>Gelmart</u>, 120 F. Supp. 3d at 332 (a case or controversy exists in the absence of an explicit threat to sue when a cease and desist letter sets forth the elements of infringement). In <u>Am. Pioneer Tours, Inc. v. Suntrek Tours, Ltd.</u>, 97-cv-6220 (DLC), 1998 WL 60944 (S.D.N.Y. Feb. 13, 1998), the defendants never made any threat—implicit or explicit—to bring legal action and threatened only an opposition proceeding at the PTO. By contrast, Hachette's September 2013 cease and desist letter and August 2014 email each threatened legal action. Finally, unlike this case, the dispute in <u>Progressive Apparel Group, Inc. v. Anheuser-Busch, Inc.</u>, 95-cv-2794 (DLC), 1996 WL 50227 (S.D.N.Y. Feb. 8, 1996), concerned only a registration proceeding; the defendant could not have sued for infringement because it did not have a competing trademark. A case decided on those facts does not help Hachette. <u>See also</u> <u>1-800-Flowers.com</u>, 905 F. Supp. 2d at 456 (defendant filed only an opposition to trademark registration and did not threaten litigation); <u>Vina Casa Tamaya S.A. v. Oakville Hills Cellar, Inc.</u>, 784 F. Supp. 2d 391 (S.D.N.Y. 2011) (defendant never opposed plaintiff's use of the mark during a seven-year period and objected only to its registration); <u>Prasco, LLC v. Med. Pharm. Corp.</u>, 537 F.3d 1329 (Fed. Cir. 2008) (no threat of litigation or accusation of infringement).

Finally, relying on <u>Microsoft Corp. v. DataTern, Inc.</u>, Hachette argues that its refusal to sign a covenant not to sue did not establish an actual controversy. But Hachette's argument misunderstands the basis of jurisdiction in this case. In <u>Microsoft</u>, the declaratory judgment defendant did not assert infringement against the plaintiff before the plaintiff filed suit. It was only after the plaintiff sued that the defendant raised a conditional counterclaim of infringement.

When the defendant moved to dismiss for lack of an actual controversy, the plaintiff demanded that the defendant sign a covenant not to sue. The Court of Appeals reasoned that these facts did not establish an actual controversy because a "declaratory judgment plaintiff must plead facts sufficient to establish jurisdiction at the time of the complaint, and post-complaint facts cannot create jurisdiction where none existed at the time of filing." Microsoft Corp. v. DataTern, Inc., 755 F.3d 899, 906 (Fed. Cir. 2014). Thus, the refusal to covenant not to sue could not, on its own, establish declaratory judgment jurisdiction because it was not proceeded by a threat of suit. Id. Here, however, Hachette threatened litigation *before* the plaintiffs sued, and the plaintiffs rely on those threats—not on the absence of a covenant not to sue—to establish jurisdiction.

To be sure, a covenant not to sue could defeat jurisdiction by mooting the actual controversy in this case. But Hachette's equivocal assurance that it will not sue the plaintiffs for their current use does not. To determine whether a promise not to sue moots a controversy, the court looks to: "(1) the language of the covenant, (2) whether the covenant covers future, as well as past, activity and products, and (3) evidence of intention or lack of intention on the part the party asserting jurisdiction, to engage in new activity or to develop new potentially infringing products that arguably are not covered by the covenant." Nike, 663 F.3d at 96. Here, Hachette has explicitly refused to foreclose a future lawsuit, see Reply Br. at 8; and the plaintiffs intend to engage in new activity; and, thus, Hachette's current litigation position regarding the plaintiffs' use of the mark has not eliminated the actual controversy.

  **B. Discretion**

Having found that the plaintiffs have plausibly pleaded an actual controversy, the Court must decide whether to exercise jurisdiction. "The Declaratory Judgment Act by its express terms vests a district court with discretion to determine whether it will exert jurisdiction over a

proposed declaratory action or not." Dow Jones & Co., Inc. v. Harrods Ltd., 346 F.3d 357, 359 (2d Cir. 2003). A court should exercise jurisdiction "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." Broadview Chem. Corp. v. Loctite Corp., 417 F.2d 998, 1001 (2d Cir. 1969). "If either prong is met, the action must be entertained." Continental Cas. Co. v. Coastal Sav. Bank, 977 F.2d 734, 737 (2d Cir. 1992). But it is an abuse of discretion to hear a declaratory judgment action that removes a controversy from the forum where it properly belongs. Topp-Cola Co. v. Coca-Cola Co., 314 F.2d 124, 126 (2d Cir. 1963).

Hachette contends, in essence, that the plaintiffs brought this declaratory action primarily to disrupt Hachette's TTAB opposition. In other words, the plaintiffs are forum shopping. If that were true, the Court should not exercise jurisdiction. See Topp-Cola, 314 F.2d at 126. Doing so would be inefficient and would undermine the primary jurisdiction of the PTO to decide registration questions in the first instance. But that is not the case. The plaintiffs have a concrete business interest in determining whether their current and future use of ELLE SASSON exposes them to liability. Hachette has claimed infringement and dilution. Each time the plaintiffs use their allegedly infringing mark, they increase their exposure to potential damages. Delaying consideration of these claims pending the outcome of the TTAB proceeding "undercuts the purpose of declaratory relief" by forcing the plaintiffs "either to abandon use of trademarks" they have been using in commerce "or to persist in piling up potential damages." Goya Foods, Inc. v. Tropicana Prods., Inc., 846 F.2d 848, 854 (2d Cir. 1988) (internal quotation marks omitted). Entering judgment will settle the infringement and dilution claims and thereby relieve the

plaintiffs from the uncertainty looming over their fashion business. Thus, the Court will exercise jurisdiction. See Broadview Chem., 417 F.2d at 1001.

**III.     Standing of Elle Sasson and Elle Moore & G LLC**

Hachette claims that plaintiffs Elle Sasson and Elle Moore & G LLC lack standing because they have no interest in the ELLE SASSON mark. According to Hachette, its only real dispute is with Maga Team, the trademark's owner.

Standing is a fundamental prerequisite to a federal court's power. Derived from Article III's case or controversy requirement, "the standing question is whether the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on its behalf." Warth v. Seldin, 422 U.S. 490, 498-99 (1975) (internal quotation marks omitted). "To establish Article III standing, a plaintiff must therefore allege, and ultimately prove, that he has suffered an injury-in-fact that is fairly traceable to the challenged action of the defendant, and which is likely to be redressed by the requested relief." Baur v. Veneman, 352 F.3d 625, 632 (2d Cir. 2003). A "mere demand for declaratory relief does not by itself" establish standing. S. Jackson & Son, Inc. v. Coffee, Sugar & Cocoa Exch. Inc., 24 F.3d 427, 431 (2d Cir. 1994). When a declaratory judgment action seeks "a mere declaration of law without implications for the practical enforcement upon the parties, the case is properly dismissed." Browning Debenture Holders' Comm. v. DASA Corp., 524 F.2d 811, 817 (2d Cir. 1975).

Both parties have standing. Hachette contends that it disputes only the registration of the ELLE SASSON trademark. But, as discussed in greater detail above, the plaintiffs have pleaded a controversy concerning both registration and use. Sasson and Elle Moore & G each have a legal interest in a judgment declaring whether the mark infringes or dilutes Hachette's mark.

Sasson designs, and Elle Moore & G markets, the clothing line bearing the name ELLE SASSON. Both parties use the mark in commerce in the United States, and, if their use infringes the ELLE mark, both parties are potentially liable in damages. See 1-880 Contacts, Inc. v. WhenU.Com, Inc., 414 F.3d 400, 406-07 (2d Cir. 2005) (in order to prevail on a trademark infringement claim, a plaintiff must prove that the defendant "used the mark . . . in commerce . . . without the plaintiff's consent."); Kelly-Brown v. Winfrey, 717 F.3d 295, 305 (2d Cir. 2013) ("A plaintiff is not required to demonstrate that a defendant made use of the mark in any particular way to satisfy the 'use in commerce' requirement."). Thus, both parties have standing.

## IV.   Sealing of Pleadings and Exhibits

In its January 27, 2016 Order, the Court permitted the parties to file the amended complaint, motion to dismiss, opposition, reply, and all exhibits under seal to protect the privacy of their settlement negotiations. Having decided this motion on the basis of those negotiations, the Court now unseals them.

"The presumption of access" to judicial documents "is based on the need for federal courts, although independent—indeed, particularly because they are independent—to have a measure of accountability and for the public to have confidence in the administration of justice." United States v. Amodeo, 71 F.3d 1044, 1048 (2d Cir. 1995). "In order to be designated a judicial document, the item filed must be relevant to the performance of the judicial function and useful in the judicial process." Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 119 (2d Cir. 2006) (internal quotation marks omitted). The First Amendment establishes a presumption of access to those judicial documents "necessary to understand the merits" of a proceeding. Newsday LLC v. Cty. of Nassau, 730 F.3d 156, 164 (2d Cir. 2013). The First Amendment presumption can be overcome only by "specific, on-the-record findings that sealing is necessary

to preserve higher values and only if the sealing order is narrowly tailored to achieve that aim." Lugosch, 435 F.3d at 124.

The sealed settlement negotiations are judicial documents. They are necessary to understand the merits of this proceeding because both parties use the documents to bolster their position. The plaintiffs rely on the documents to show that Hachette disputed the use of the disputed trademark and threatened suit. Hachette relies on them to show that it had abandoned any present intent to sue the plaintiffs and that the only real dispute was over the PTO proceedings. Without access to the sealed documents, the public cannot understand the decisions in this Opinion and Order.

No countervailing higher value requires the settlement documents to remain sealed. Hachette argues that settlement documents should be sealed to protect the confidentiality of candid settlement negotiation, advancing the goal of prompt and amicable settlement. This value has been recognized in the case law, see, e.g., United States v. Glens Falls Newspapers, Inc., 160 F.3d 853, 858 (2d Cir. 1998), and has been codified in Federal Rule of Evidence 408, which prohibits the introduction of settlement negotiations "to prove or disprove the validity or amount of a disputed claim." But it is a value with distinct limits. For example, Rule 408 authorizes the introduction of settlement negotiations for virtually any purpose not specifically mentioned by the Rule. Fed. R. Evid. 408(b). The settlement negotiations in this case would be admissible under Rule 408 because they do not go to the merits of a dispute, but, rather, establish that a dispute exists at all. Cf. PRL USA Holdings, Inc. v. U.S. Polo Ass'n, Inc., 520 F.3d 109, 113 (2d Cir. 2008) (settlement negotiations can be used to prove estoppel by acquiescence, and, thus, to show that no dispute exists). The value of keeping these settlement negotiations confidential under this set of facts does not trump the public's First Amendment presumption of access.

## CONCLUSION

The motion to dismiss is DENIED. The parties are instructed to file unredacted copies of the amended complaint, motion to dismiss, opposition, reply, and all exhibits within one week of this Opinion and Order. The discovery stay is lifted, and the parties are to resume discovery. The parties shall file a joint letter within one week of the filing of this Opinion and Order setting forth a reasonable schedule for completing discovery.

**SO ORDERED.**

_____
SARAH NETBURN
United States Magistrate Judge

DATED:   New York, New York
         April 20, 2016