**McCARTER & ENGLISH, LLP**
Gary H. Fechter
Lori J. Shyavitz
245 Park Avenue, 27th Floor
New York, NY  10167
Tel: (212) 609-6800
Fax: (212) 609-6921
gfechter@mccarter.com
lshyavitz@mccarter.com

*Attorneys for Sasson Parties*
*Hachette Filipacchi Presse SA*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ELLE SASSON, MAGA TEAM (HONG KONG) LTD. and ELLE MOORE & G, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> HACHETTE FILIPACCHI PRESSE d/b/a ELLE MAGAZINE, <br><br> Defendant. <br><br> HACHETTE FILIPACCHI PRESSE SA, <br><br><br> Counterclaim Plaintiff, <br> v. <br><br> ELLE SASSON, MAGA TEAM (HONG KONG) LTD. and ELLE MOORE & G, LLC, <br><br> Counterclaim Defendants. | Civil Action No. 15-cv-00194-VM <br><br><br> **ANSWER TO FIRST AMENDED COMPLAINT, AFFIRMATIVE DEFENSES AND COUNTERCLAIM WITH JURY DEMAND** |

Defendant-Counterclaim Plaintiff Hachette Filipacchi Presse SA, incorrectly sued herein

as "Hachette Filipacchi Press d/b/a ELLE Magazine,"  (hereinafter, "Hachette"), by its

undersigned attorneys, McCarter & English, LLP,  hereby answers the First Amended Complaint

for Declaration of Non-Infringement and Non-Dilution of Trademark (the "First Amended Complaint") filed by Plaintiffs-Counterclaim Defendants Elle Sasson, Maga Team (Hong Kong) Ltd. and Elle Moore & G, LLC (collectively, the "Sasson Parties") as follows:

1.      Hachette states that no response is required to paragraph 1 of the First Amended Complaint, which contains introductory statements. To the extent that this paragraph is deemed to contain factual allegations, Hachette denies the allegations of paragraph 1 of the First Amended Complaint.

## AS TO INTRODUCTION

2.      Hachette states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 2 of the First Amended Complaint.

3.      In response to paragraph 3 of the First Amended Complaint, Hachette states that it is the source of the famous magazine, *ELLE*. Hachette further states that it owns numerous trademark registrations for ELLE and ELLE formative marks in the United States and abroad, that it sent a cease and desist letter to Elle Sasson and Maurice Sasson and that it filed an opposition in the U.S. Patent and Trademark Office (the "PTO") to the application to register the mark ELLE SASSON. Except as specifically stated, Hachette denies the remaining allegations contained in paragraph 3 of the First Amended Complaint.

## AS TO NATURE OF THE ACTION

4.      Hachette admits that the Sasson Parties purport to bring an action for declaratory judgment under the Lanham Act, but Hachette denies that jurisdiction exists under the Declaratory Judgment Act and further denies the First Amended Complaint states a claim for relief and that the Sasson Parties are entitled to any of the relief sought by the First Amended

Complaint. Except as specifically stated, Hachette denies the remaining allegations contained in paragraph 4 of the First Amended Complaint.

## AS TO JURISDICTION AND VENUE

5.     Paragraph 5 of the First Amended Complaint states a conclusion of law to which no responsive pleading is required.  To the extent that paragraph 5 of the First Amended Complaint contains any factual allegations, Hachette denies such factual allegations.  Hachette further denies that this Court has jurisdiction over this matter under the Declaratory Judgment Act.

6.     Paragraph 6  of the First Amended Complaint states a conclusion of law to which no responsive pleading is required; to the extent that any response is required, such allegations are denied.

## AS TO THE PARTIES

7.     Hachette states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 7 of the  First Amended Complaint.

8.     Hachette states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 8 of the  First Amended Complaint.

9.     Hachette states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 9 of the  First Amended Complaint.

10.     Hachette states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 10 of the  First Amended Complaint.

11.     Hachette states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 11 of the  First Amended Complaint.

12.     In response to paragraph 12 of the First Amended Complaint, Hachette states that it is a corporation organized and existing under the laws of France, with offices at 149 Rue Anatole France, Levallois-Perret Cedex, 92534, France.  Hachette further states that no company directly owned or controlled by Hachette has offices within the State of New York.  Except as specifically stated, Hachette denies the remaining allegations contained in paragraph 12 of the First Amended Complaint.

13.     In response to paragraph 13 of the First Amended Complaint, Hachette states that it is the source of the famous publication, *ELLE* magazine.  Hachette further states that it owns numerous trademark registrations for ELLE and ELLE formative trademarks in the United States and abroad in connection with a variety of goods and services.  Except as specifically stated, Hachette denies the remaining allegations contained in paragraph 13 of the First Amended Complaint.

14.     In response to paragraph 14 of the First Amended Complaint, Hachette states that Hachette does business and solicits business within the State of New York.   Except as specifically stated, Hachette denies the remaining allegations contained in paragraph 14 of the First Amended Complaint.

## AS TO FACTUAL BACKGROUND

### As to Elle Sasson's Fashion Line and Growth

15.     Hachette states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 15 of the First Amended Complaint. Hachette refers to Exhibit A to the First Amended Complaint for its contents.

16.     Hachette states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 16 of the  First Amended Complaint.

4

17.     Hachette states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 17 of the First Amended Complaint. Hachette refers to Exhibit B to the First Amended Complaint for its contents.

18.     Hachette states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 18 of the First Amended Complaint.

19.     Hachette states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 19 of the First Amended Complaint.

20.     Hachette states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 20 of the First Amended Complaint.

21.     Hachette states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 21 of the First Amended Complaint. Hachette refers to Exhibit C to the First Amended Complaint for its contents.

22.     Hachette states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 22 of the First Amended Complaint. Hachette refers to Exhibit D to the First Amended Complaint for its contents.

23.     Hachette states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 23 of the First Amended Complaint. Hachette refers to Exhibit E to the First Amended Complaint for its contents.

24.     Hachette states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 24 of the First Amended Complaint. Hachette refers to Exhibit F to the First Amended Complaint for its contents.

25.     Hachette states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 25 of the First Amended Complaint. Hachette refers to Exhibit G to the First Amended Complaint for its contents.

26.     Hachette states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 26 of the First Amended Complaint. Hachette refers to Exhibit H to the First Amended Complaint for its contents.

27.     Hachette states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 27 of the First Amended Complaint. Hachette refers to Exhibit I to the First Amended Complaint for its contents.

28.     Hachette states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 28 of the First Amended Complaint. Hachette refers to Exhibit J to the First Amended Complaint for its contents.

29.     Hachette states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 29 of the First Amended Complaint. Hachette refers to Exhibit K to the First Amended Complaint for its contents.

30.     Hachette states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 30 of the First Amended Complaint.

31.     Hachette states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 31 of the First Amended Complaint. Hachette refers to Exhibit L to the First Amended Complaint for its contents.

32.     Hachette states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 32 of the First Amended Complaint.

33.     Hachette states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 33 of the  First Amended Complaint.

## As to the Sasson Name

34.     Hachette states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 34 of the First Amended Complaint.

35.     Hachette states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 35 of the First Amended Complaint.

36.     Hachette states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 36 of the First Amended Complaint. Hachette refers to Exhibit G to the First Amended Complaint for its contents.

37.     Hachette states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 37 of the First Amended Complaint.

38.     Hachette states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 38 of the First Amended Complaint.

39.     Hachette states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 39 of the First Amended Complaint.

40.     Hachette states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 40 of the First Amended Complaint.

## As to Defendant's Threat of Legal Proceedings Against Plaintiffs

41.     In response to paragraph 41 of the First Amended Complaint, Hachette states that it sent a letter to Elle Sasson and Maurice Sasson. Hachette admits that a copy of that letter is attached as Exhibit M to the First Amended Complaint (the "Letter") and otherwise refers to the Letter for its contents. Hachette denies knowledge or information sufficient to form a belief as to the remaining allegations contained in paragraph 41 of the First Amended Complaint.

42.　　In response to paragraph 42 of the First Amended Complaint, Hachette refers to Exhibit M for its contents.  Hachette otherwise denies the allegations of paragraph 42 of the First Amended Complaint.

43.　　In response to paragraph 43 of the First Amended Complaint, Hachette states that the parties engaged in settlement discussions after Hachette sent the Letter.  Except as specifically stated, Hachette denies the remaining allegations contained in paragraph 43 of the First Amended Complaint.

44.　　In response to paragraph 44 of the First Amended Complaint, Hachette refers to the April 28, 2014 e-mail for its contents.  Except as specifically stated, Hachette denies the remaining allegations contained in paragraph 44 of the First Amended Complaint.

45.　　In response to paragraph 45 of the First Amended Complaint, Hachette refers to the June 5, 2014 e-mail for its contents.  Except as specifically stated, Hachette denies the remaining allegations contained in paragraph 45 of the First Amended Complaint.

46.　　In response to paragraph 46 of the First Amended Complaint, Hachette refers to the June 12, 2014 e-mail for its contents.  Except as specifically stated, Hachette denies the remaining allegations contained in paragraph 46 of the First Amended Complaint.

47.　　In response to paragraph 47 of the First Amended Complaint, Hachette refers to the August 19, 2014 e-mail for its contents.  Except as specifically stated, Hachette denies the remaining allegations contained in paragraph 47 of the First Amended Complaint.

48.　　In response to paragraph 48 of the First Amended Complaint, Hachette refers to the October 22, 2014 e-mail for its contents.  Except as specifically stated, Hachette denies the remaining allegations contained in paragraph 48 of the First Amended Complaint.

49. In response to paragraph 49 of the First Amended Complaint, Hachette refers to the November 3, 2014 e-mail for its contents. Except as specifically stated, Hachette denies the remaining allegations contained in paragraph 49 of the First Amended Complaint.

50. In response to paragraph 50 of the First Amended Complaint, Hachette refers to the December 29, 2014 e-mail for its contents. Except as specifically stated, Hachette denies the remaining allegations contained in paragraph 50 of the First Amended Complaint.

51. Hachette denies the allegation that plaintiff Maga Team (Hong Kong) Ltd. on February 21, 2013 filed an intent-to-use application for the trademark ELLE SASSON in the PTO and states that it lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 51 of the First Amended Complaint.

52. In response to paragraph 52 of the First Amended Complaint, Hachette states that on February 24, 2014, Hachette filed Opposition No. 91215067 to U.S. Application No. 85/855,981, seeking registration of the trademark ELLE SASSON, and that the Notice of Opposition included claims for likelihood of confusion and dilution (the "Opposition"). Except as specifically stated, Hachette denies the remaining allegations contained in paragraph 52 of the First Amended Complaint.

53. In response to paragraph 53 of the First Amended Complaint, Hachette states that an Answer to the Notice of Opposition was filed with the Trademark Trial and Appeal Board (the "TTAB"). Hachette refers to the Answer to Notice of Opposition for its contents. Except as specifically stated, Hachette denies the remaining allegations of paragraph 53 of the First Amended Complaint

54.     In response to paragraph 54 of the First Amended Complaint, Hachette states that a motion to suspend the Opposition was filed with the Trademark Trial and Appeal Board. Hachette refers to Exhibit N to the First Amended Complaint for its contents.

## As to Lack of Confusion

55.     In response to paragraph 55 of the First Amended Complaint, Hachette states that it is not presently aware of any instances of actual confusion.    However, Hachette states that a likelihood of confusion exists as a result of the Sasson Parties' use of and application to register the ELLE SASSON Mark.   Except as specifically stated, Hachette denies the remaining allegations contained in paragraph 55 of the First Amended Complaint.

56.     In response to paragraph 56 of the First Amended Complaint, Hachette states that it is not presently aware of any instances of actual confusion.  However, Hachette states that a likelihood of confusion exists as a result of the Sasson Parties' use of and application to register the ELLE SASSON Mark.   Except as specifically stated, Hachette denies the remaining allegations contained in paragraph 56 of the First Amended Complaint.

57.     In response to paragraph 57 of the First Amended Complaint, Hachette states that it is not presently aware of any instances of actual confusion.  However, Hachette states that a likelihood of confusion exists as a result of the Sasson Parties' use of and application to register the ELLE SASSON Mark.   Except as specifically stated, Hachette denies the remaining allegations contained in paragraph 57 of the First Amended Complaint.

58.     Hachette denies the allegations contained in paragraph 58 of the First Amended Complaint.

59.     Hachette denies the allegations contained in paragraph 59 of the First Amended Complaint.

60.     Paragraph 60 of the First Amended Complaint contains conclusions of law to which no response is required; to the extent that any response is required, such allegations are denied.

**AS TO COUNT I
DECLARATION UNDER 28 U.S.C. § 2201 OF
NON-INFRINGEMENT OF TRADEMARK UNDER THE LANHAM ACT**

61.     Hachette repeats and realleges each of its foregoing responses to paragraphs 1 through 60 of the First Amended Complaint as if set forth fully herein.

62.     Hachette denies the allegations contained in paragraph 62 of the First Amended Complaint.

63.     Hachette states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 63 of the First Amended Complaint.

64.     In response to paragraph 64 of the First Amended Complaint, Hachette states that it did not withdraw its cease and desist letter of September 13, 2013. Except as specifically stated, Hachette denies the remaining allegations of paragraph 64 of the First Amended Complaint.

65.     In response to paragraph 65 of the First Amended Complaint, Hachette states that the parties were engaged in settlement negotiations through December 2014, and that those discussions ultimately reached an impasse. Except as specifically stated, Hachette denies the remaining allegations contained in paragraph 65 of the First Amended Complaint.

66.     Hachette denies the allegations of paragraph 66 of the First Amended Complaint.

67.     Hachette denies the allegations of paragraph 67 of the First Amended Complaint.

68.     Hachette denies the allegations of paragraph 68 of the First Amended Complaint.

## AS TO COUNT II
## DECLARATION UNDER 28 U.S.C. § 2201 OF NON-DILUTION
## OF TRADEMARK UNDER OF THE LANHAM ACT\

69.     Hachette repeats and realleges each of its foregoing responses to paragraphs 1 through 68 of the First Amended Complaint as if set forth fully herein.

70.     Hachette denies the allegations of paragraph 70 of the First Amended Complaint.

71.     Hachette denies the allegations of paragraph 71 of the First Amended Complaint.

## AS TO COUNT III

## DECLARATION OF NON-INFRINGEMENT AND NON-DILUTION OF TRADEMARK
## UNDER THE LANHAM ACT BY PLAINTIFF ELLE SASSON

72.     Hachette repeats and realleges each of its foregoing responses to paragraphs 1 through 71 of the First Amended Complaint as if set forth fully herein.

73.     Hachette states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 73 of the First Amended Complaint.

74.     Hachette admits the allegations of paragraph 74 of the First Amended Complaint.

75.     Hachette denies the allegations of paragraph 75 of the First Amended Complaint.

76.     Hachette denies the allegations of paragraph 76 of the First Amended Complaint.

77.     Hachette denies the allegations of paragraph 77 of the First Amended Complaint.

78.     Hachette denies the allegations of paragraph 78 of the First Amended Complaint.

79.     Hachette denies the allegations of paragraph 79 of the First Amended Complaint.

80.     Hachette denies the allegations of paragraph 80 of the First Amended Complaint.

## RESPONSE TO PRAYER FOR RELIEF

In response to the Sasson Parties' prayer for relief, Hachette denies that the Sasson Parties are entitled to any relief whatsoever and requests that the Court enter judgment in Hachette's favor on all counts and award Hachette its reasonable costs and attorneys' fees and any further relief as the Court may determine appropriate.

## AFFIRMATIVE DEFENSES

In response to the Sasson Parties' First Amended Complaint, and without admitting any allegations of the First Amended Complaint not otherwise admitted, Hachette asserts the following affirmative and other defenses. In asserting these defenses, Hachette does not assume the burden of proof with respect to any issue upon which applicable law places the burden of proof upon the Sasson Parties.

### First Affirmative Defense

The Sasson Parties' First Amended Complaint, in whole or in part, fails to state claims upon which relief can be granted.

### Second Affirmative Defense

This Court lacks jurisdiction over this action under the Declaratory Judgment Act as there is no actual controversy between the parties.

## COUNTERCLAIM

Counterclaim Plaintiff Hachette Filipacchi Presse SA ("Hachette"), by its attorneys, as and for its compulsory counterclaim against Counterclaim Defendants Elle Sasson, Maga Team (Hong Kong) Ltd. and Elle Moore & G, LLC (collectively, the "Sasson Parties") alleges as follows:

## JURISDICTION AND VENUE

1.     This is an action for injunctive relief and damages for trademark infringement, trademark dilution, unfair competition and false designation of origin arising under the Trademark Act of 1946, 15 U.S.C. §§ 1051, et seq. (the "Lanham Act"), and for trademark infringement, trademark dilution, and unfair competition under the laws of the State of New York.

2.     This Court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332 and 1338(a) and (b); and 15 U.S.C. §§ 1116 and 1121. This Court has jurisdiction pursuant to the principles of supplemental jurisdiction and 28 U.S.C. § 1367 over Hachette's claims for trademark infringement, trademark dilution, unfair competition under the laws of the State of New York.

3.     This Court has personal jurisdiction over the Sasson Parties because each of the Sasson Parties has submitted to the jurisdiction of this Court by filing the First Amended Complaint in this action against Hachette in this Court. In addition, upon information and belief, the Sasson Parties: (a) are present in and transact business in the State of New York; (b) have had continuous, systematic and substantial business contacts with residents of this District; and/or (c) have deliberately created confusion among Hachette's existing and potential customers, many of whom reside in New York.

4.     Venue is proper in this district under 28 U.S.C. § 1391(c) because this Court has personal jurisdiction over Sasson Parties in this judicial district and a substantial part of the events or omissions giving rise to Hachette's claims occurred in this District.

## THE PARTIES

5.     Counterclaim Plaintiff Hachette Filipacchi Presse SA is a corporation, organized and existing under the laws of France, having its principal place of business at 149 Rue Anatole,

Levallois-Perret Cedex, 92534, France.

6.      Upon information and belief, Counterclaim Defendant Elle Sasson is an individual and a citizen of the United States.  Upon information and belief, Ms. Sasson is a fashion designer, involved in the design of the Sasson Parties' goods offered in connection with the ELLE SASSON Mark, defined below.

7.      Upon information and belief, Counterclaim Defendant Maga Team (Hong Kong) Ltd. ("Maga") is a corporation organized and existing under the laws of the British Virgin Islands, with a mailing address of P.O. Box 915, Road Town Tortola, British Virgin Islands. Upon information and belief, Maga owns U.S. Application No. 85/855,981 for the trademark ELLE SASSON (the "ELLE SASSON Mark"), in connection with "Clothing, namely, dresses, pants, jackets, blouses, pant suits, dress suits, slacks, shirts, headwear, belts, skirts, evening gowns, vests, blazers, [and] lingerie," in Class 25 (the "Sasson Goods") (the "Application").  The Application was filed on February 21, 2013 on an intent to use basis by Maga's assignors, Counterclaim Defendant Elle Sasson and Maurice Sasson.  Upon information and belief, Maga is also the manufacturer and exporter of the Sasson Goods offered in connection with the ELLE SASSON Mark.

8.      Upon information and belief, Counterclaim Defendant Elle Moore & G LLC ("Elle Moore") is a limited liability company organized and existing under the laws of the State of New York, with offices at 437 Madison Avenue, 40th Floor, New York, New York.  Upon information and belief, Elle Moore is responsible for importation, distribution, and sales of the Sasson Goods offered in connection with the ELLE SASSON Mark.

**FACTS COMMON TO ALL CLAIMS**

9.      On April 20, 2016, the Court entered an Order denying Hachette's previously

filed Motion to Dismiss the First Amended Complaint for lack of subject matter jurisdiction pursuant to Rule 13(a) of the Federal Rules of Civil Procedure.

10.     As a result, Hachette must assert these claims against the Sasson Parties pursuant to Rule 14 of the Federal Rules of Civil Procedure.

**A.     Hachette's Famous ELLE Trademarks**

11.     Hachette is the owner of the world famous brand ELLE.

12.     Since 1945, Hachette, directly and through its predecessors and licensees, has been engaged in the sale of a wide spectrum of goods and services under the mark ELLE, alone or with other words, including without limitation the publication, distribution and sale of the world-famous women's magazine entitled *ELLE*.  This magazine is a unique mixture of fashion, beauty, health, entertainment, culture, topical events, and food articles.

13.     *ELLE* magazine was launched in the United States in 1985.  *ELLE* is said to be the world's largest fashion magazine, with 46 international editions in over 60 countries, and 23 million readers globally.  Since its launch *ELLE* magazine has become one of the most pre-eminent fashion magazines in existence, replete with articles and advertisements for a wide range of fashion and beauty related products.

14.     *ELLE* magazine is extensively promoted nationwide via the Internet, at newsstands and elsewhere, and enjoys substantial sales and reputation.  *ELLE* magazine features extensive coverage (*e.g.*, articles, photography and advertisements) concerning fashion, beauty tips, cosmetics, make-up and entertainment, as well as reviews and advertisements regarding apparel and accessories.  *ELLE* magazine also offers its readers fashion, hair, beauty and skin care information and advice on its website, www.elle.com.

15.     *ELLE* magazine has been regularly distributed in the United States since its

launch in 1985. The U.S. edition of *ELLE* magazine is widely circulated in print. Sales of *ELLE* magazine reached over five million readers each month in the United States in 2011, 2012 and 2013. *ELLE* magazine is also digitally available on Hachette's ELLE.com website, and, since at least as early as September 2010, on Apple and Android tablets through an ELLE application. Moreover, the magazine is seen by and is familiar to countless more consumers, as it is typically conspicuously displayed and sold at check-out counters in grocery and convenience stores, drugstores and other similar retail locations, and is frequently available for reading at offices and spas.

16.     As one of the most preeminent fashion magazines in existence, replete with articles and advertisements for a wide range of fashion and other products, *ELLE* magazine and the ELLE brand have become iconic in the fashion industry.

17.     The ELLE mark has been extensively used in connection with a wide range of goods and services, including, but not limited to, clothing, shoes, the online publication of books and magazines, cosmetics, perfumes, furniture, electronic applications and goods, including fitness DVDs, videos, iPad applications and mobile applications, appliances such as phone and phone accessories, electronic publications, jewelry, cell phones, hair accessories, entertainment services, watches, eyewear, bags and giftware advice as a natural extension of *ELLE* magazine's focus on fashion, shopping, beauty, pop culture, music, film, entertainment, art and celebrities.

18.     Since at least as early as 1965, and prior to any date upon which Defendants can rely, Hachette, through its licensee, has used in commerce the trademark ELLE for clothing, resulting in millions of dollars of sales of such merchandise in the United States. For example, ELLE apparel is sold nationwide at Kohl's retail establishment and via the kohls.com website.

19.     The ELLE mark has also established a strong presence on the Internet through

numerous websites, including, but not limited to, www.elle.com and**Error! Hyperlink reference not valid.** www.elleuk.com, each of which has millions of visitors per month. For example, the elle.com website features videos and film clips in the fields of fashion and accessories, hair and beauty, pop culture, film, news, life and love, shopping, and other topics of interest, plus links to third-party videos. The elle.com site also offers a video platform with eight channels, which include fashion, celebrity and runway features. Consequently, Hachette's ELLE mark enjoys great media presence.

20.     The ELLE mark is universally recognized as a distinct brand associated with inspiring women and girls to create and embrace their own style as well as other positive values in modern society. On account of this reputation, Hachette enjoys a prominent following on numerous social media channels, including, but not limited to, Facebook, Twitter, Pinterest, Instagram, YouTube and Google+. For example, there are various Facebook pages dedicated to Hachette, including *ELLE Magazine (US), ELLE,* among others. On information and belief, in 2011, the *ELLE Magazine (US)* Facebook page had more than 365,000 fans. Hachette also owns the popular Twitter account *@ELLEmagazine*, which, in 2011, had over 1 million followers. The numbers for all of Hachette's social media platforms have continued to grow year over year whereby today Hachette has a total of 15.2 million friends and fans via social media.

21.     Hachette owns numerous trademark registrations and applications for its family of ELLE-formative marks covering various goods and services (collectively, "Hachette's Goods and Services"), identified in **Exhibit A** hereto (collectively, the "ELLE Marks"), including but not limited to U.S. Registration No. 0758137, for the mark ELLE, claiming first use in 1945.

22.     Many of the registrations for the ELLE Marks are incontestable, including U.S. Registration Nos. 0862001, 1454393, 3614358 and 3745516, which all cover apparel items.

23.     All of the registrations for the ELLE Marks are valid and subsisting, unrevoked and uncancelled, and are prima facie evidence of the validity of Hachette's exclusive right to use the ELLE Marks in commerce in connection with the goods and services described in the registrations, without condition or limitation, and constitute constructive notice of Hachette's ownership of the ELLE Marks for the goods and services described in the registrations, as provided for by Sections 7(b) and 22 of the Lanham Act, 15 U.S.C. §§ 1057(b) and 1072.

24.     As a result of Hachette's many years of effort advertising, promoting, marketing and selling magazines and other products in connection with the ELLE Marks, the ELLE Marks have become famous marks entitled to the utmost protection.

25.     The Trademark Trial and Appeal Board has determined that Hachette's mark ELLE "is famous in connection with its magazine and within the fashion industry generally, and is entitled to broad protection." *Hachette Filipacchi Presse v. Ev Int'l, LLC*, Opposition No. 91174433 (Sept. 5, 2008).  A true and correct copy of this decision is attached hereto as **Exhibit B**.

26.     To date, Hachette has invested significant time and effort advertising and promoting its magazines and products bearing the ELLE Marks in the United States and throughout the World, and Hachette prominently displays the distinctive ELLE Marks in its advertising and promotional materials.   Hachette's efforts in this regard have resulted in widespread recognition of the ELLE Marks.   For example, as of 2012, *ELLE* magazine experienced 262 million press impressions each month.  This number has grown significantly year over year, whereby as of 2016, *ELLE* receives 1.5 billion press impressions each month.

27.     As a result of Hachette's extensive efforts, Hachette has enjoyed significant circulation of its magazines bearing the ELLE Marks and significant sales of products bearing

the ELLE Marks over the many years that the ELLE Marks have been used by Hachette.

28.     As a result of the extensive advertising of *ELLE* magazine and ELLE-branded products in the United States, and the widespread sale and success of *ELLE* magazine and *ELLE*-branded products in the United States, the public, consumers, and the trade generally have come to associate the distinctive ELLE Marks with magazines, apparel and other products of exceptional quality, materials, style, and reliability, and have come to recognize that magazines, apparel and other products bearing the ELLE Marks originate from Hachette.

29.     Hachette's sales of its *ELLE* magazine and ELLE-branded products have been significant.  Between 2007 and 2012, Hachette sold approximately $900 million worth of *ELLE* magazines, ELLE-branded fashion products, including clothing, and cosmetics in the United States.

30.     Hachette's licensed fashion items have generated revenues of over one billion dollars in retail stores within an average of $650 million annually between 2005 and 2009.  Between 2007 and 2012, Opposer and its retail partners have spent more than 15 million dollars to promote the sale of *ELLE* magazines, ELLE-branded fashion products and cosmetics.

31.      In addition, Hachette and *ELLE* magazine have won numerous awards, including but not limited to 2008 Magazine of the Year, awarded by the Accessories Council, three awards for editorial excellence by the Fragrance Foundation in 2011.  Hachette was also selected as 2009's Most Engaged Media Brands.    In 2012, Hachette and *ELLE* magazine received several awards, including, but not limited to the FiFi Award for Editorial Excellence, Best Site Redesign from the MIN Editorial & Design Awards, Best Cover & Best Editor's Letter from the Huffington Post, Runner Up for Magazine Publisher of the Year from the Delaney Report, Marketing and Media Awards, Honorable Mention for Best Online feature from the MIN

Editorial & Design Awards, and Elle magazine was also recognized was Digitally 'Gifted' by L2 Digital Think Tank. In 2013, *ELLE* magazine and Hachette were ranked number five on the Advertising Age A-List and won an award for Creative Director of the Year from The Daily.

32. The ELLE mark is vital to Hachette and represents not only Hachette's products but also its reputation. Hachette will suffer irreparable harm if any third parties, including the Sasson Parties herein, are allowed to trade off Hachette's reputation and goodwill by selling goods bearing marks confusingly similar to the ELLE mark.

**B.     The Sasson Parties' Conduct**

33. Counterclaim Defendant Maga owns the Application to register the ELLE SASSON Mark in connection with apparel in Class 25.

34. The Application was filed on February 21, 2013 on an intent to use basis.

35. Upon information and belief, in Spring 2014 the Sasson Parties first began using the ELLE SASSON Mark in commerce in connection the Sasson Goods.

36. Upon information and belief, since at least as early as Spring 2014, the Sasson Parties have been manufacturing, importing, advertising, promoting, marketing, distributing and/or selling the Sasson Goods bearing the ELLE SASSON Mark, which is confusingly similar to Hachette's ELLE Marks.

37. Upon information and belief, the Sasson Parties' use of the ELLE SASSON Mark in connection with the Sasson Goods infringes the ELLE Marks and alludes to Hachette, *ELLE* Magazine and products offered by Hachette in connection with the ELLE Marks, thereby trading upon Hachette's goodwill.

38. The Sasson Parties' use of the ELLE Marks on or in connection with the advertising, marketing, distribution, offering for sale, and sale of the Sasson Goods is likely to

cause consumers to mistakenly believe that the Sasson Goods bearing the ELLE SASSON Mark emanate from or are authorized and/or approved by Hachette.

39.     The Sasson Parties, without authorization or license from Hachette, have adopted and are using the ELLE SASSON Mark, which includes the term ELLE as the primary and dominant term, in connection with clothing.

40.     Upon information and belief, the Sasson Goods travel in the same channels of trade as Hachette's Goods and Services.

41.     Upon information and belief, the Sasson Goods are intended for consumption by the same types of consumers that purchase Hachette's Goods and Services bearing the ELLE Marks.

42.     The Sasson Parties use of the ELLE SASSON Mark on or in connection with the advertising, marketing, distribution, offering for sale, and sale of the Sasson Goods is causing irreparable harm to Hachette.

43.     Hachette will also be harmed if the Application for the ELLE SASSON Mark proceeds to registration.

## COUNT ONE
## FEDERAL TRADEMARK INFRINGEMENT
### (15 U.S.C. § 1114)

44.     Hachette repeats and re-alleges the allegations of each of the foregoing paragraphs of this Counterclaim as if fully set forth herein.

45.     Hachette's ELLE Marks and the goodwill of the business associated with those marks in the United States and throughout the world are of great and incalculable value.

46.     The ELLE Marks are highly distinctive and arbitrary, and have become universally associated in the public mind with the fashion magazines and products of the very

highest quality and reputation, emanating from Hachette.

47.     Upon information and belief, without Hachette's authorization or consent, and having knowledge of Hachette's well-known and prior rights in the ELLE Marks, the Sasson Parties have advertised, promoted, manufactured, distributed, offered for sale and/or sold the Sasson Goods bearing the ELLE SASSON Mark to the consuming public, thereby affecting interstate commerce.

48.     Upon information and belief, the Sasson Parties' registration and use of the ELLE SASSON Marks in connection with the Sasson Goods is likely to cause and has already caused confusion, mistake and deception among the general purchasing public as to the origin of the Sasson Goods Products, and is likely to deceive the public into believing that the Sasson Goods being sold by the Sasson Parties originate from, are associated with, or are otherwise authorized by, Hachette, all to the damage and detriment of Hachette's reputation and goodwill.

49.     Hachette has no adequate remedy at law and, if Sasson Parties' activities are not enjoined, Hachette will continue to suffer irreparable harm and injury to its goodwill and reputation.

## COUNT TWO
## FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION
### (15 U.S.C. § 1125(a))

50.     Hachette repeats and re-alleges the allegations of each of the foregoing paragraphs of this Counterclaim as if fully set forth herein.

51.     The Sasson Goods sold and offered for sale by the Sasson Parties are of the same general nature and type as the licensed products sold and offered for sale by Hachette's licensees under the ELLE Marks and, as such, are likely to cause confusion to the general purchasing public.

52.     By using the ELLE SASSON Mark, which includes the term ELLE as the primary and dominant term, the Sasson Parties misrepresent and falsely describe to the general pubic the origin and source of the Sasson Goods, thereby creating a likelihood of confusion among consumers as to both the source and sponsorship of such merchandise.

53.     The Sasson Parties' unlawful, unauthorized and unlicensed manufacture, distribution, offer for sale, and/or sale of the Sasson Goods bearing the ELLE SASSON Mark falsely represents to consumers that the Sasson Goods were created, authorized or approved by Hachette, all to the Sasson Parties' profit and Hachette's great damage and injury.

54.     The Sasson Parties' aforesaid acts are in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), in that the Sasson Parties' use of the ELLE Marks, in connection with Sasson Goods, in interstate commerce constitutes a false designation of origin and unfair competition.

55.     Hachette has no adequate remedy at law and, if the Sasson Parties' activities are not enjoined, Hachette will continue to suffer irreparable harm and injury to its goodwill and reputation.

## COUNT THREE
## FEDERAL TRADEMARK DILUTION
### (15 U.S.C. § 1125(c))

56.     Hachette repeats and re-alleges the allegations of each of the foregoing paragraphs of this Counterclaim as if fully set forth herein.

57.     Hachette's ELLE Marks are widely recognized by the general consuming public in the United States as a singular designation of the source of Hachette's goods and services and thus are "famous marks" within the meaning of § 43(c) of the Lanham Act, 15 U.S.C. § 1125(c) and were famous marks prior to the Sasson Parties' conduct as alleged herein.

58.     The Sasson Parties' manufacture, distribution, marketing, offer for sale, and/or sale in commerce of the Sasson Goods is likely to and does dilute the distinctive quality of the ELLE Marks, and was done, upon information and belief, with the willful intent to trade on Hachette's reputation and/or to cause dilution of the ELLE Marks.

59.     The Sasson Parties' unauthorized use of the ELLE Sasson Mark on or in connection with the Sasson Goods was done with notice and full knowledge that such use, manufacture, distribution, sale and/or offer for sale was not authorized or licensed by Hachette.

60.     The Sasson Parties' aforesaid acts are in knowing and willful violation of Hachette's rights under § 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

61.     Hachette has no adequate remedy at law and, if the Sasson Parties' activities are not enjoined, will continue to suffer irreparable harm and injury to Hachette's goodwill and reputation.

## COUNT FOUR
## DENIAL OF REGISTRATIONS PURSUANT TO
## 15 U.S.C. §§ 1119 AND 1052(d)

62.     Hachette repeats and realleges the allegations of each of the foregoing paragraphs of this Counterclaim as if fully set forth herein.

63.     The ELLE SASSON Mark is confusingly similar to the ELLE Marks, which were in use and the subject federal registrations prior to the Sasson Parties' adoption, first use and application for registration of the ELLE SASSON Mark, and when the ELLE SASSON Mark is registered and used in connection with the Sasson Goods, it is likely to cause confusion, or to cause mistake, or to deceive consumers to mistakenly believe that the Sasson Goods are those of Hachette and/or that the Sasson Parties and the Sasson Goods are authorized or sponsored by Hachette.

64. Hachette will be damaged if the ELLE SASSON Mark obtains registration.

65. In light of the foregoing, the Court should declare that Counterclaim Defendant Maga's Application to register the ELLE SASSON Mark should be refused pursuant to 15 U.S.C. §§1119 and 1052(d).

**COUNT FIVE**
**TRADEMARK INFRINGEMENT UNDER NEW YORK COMMON LAW**

66. Hachette repeats and realleges the allegations of each of the foregoing paragraphs of this Counterclaim as if fully set forth herein.

67. The Sasson Parties have, without authorization from Hachette, used the ELLE SASSON Mark to advertise, distribute, sell and offer for sale the Sasson Goods.

68. The Sasson Parties' acts as alleged herein are likely to cause confusion, mistake, and deception to consumers as to the affiliation, connection, or association of the Sasson Parties with Hachette, and as to the origin, sponsorship, or approval of the Sasson Parties' goods by Hachette.

69. The Sasson Parties' unauthorized acts constitute direct infringement of Hachette's federal trademark registrations for its ELLE Marks in violation of New York common law.

70. Upon information and belief, the Sasson Parties' conduct is intentional, malicious, and wanton in that the Sasson Parties infringed and continue to infringe Hachette's federal trademark registrations for its ELLE Marks (i) with full knowledge that Hachette owns and has the exclusive right to use its federally registered trademarks, (ii) with the intention of causing a likelihood of confusion and mistake and to deceive, and (iii) with the intention of eliminating competition from Hachette.

71. Hachette has suffered, is suffering, and will continue to suffer irreparable injury for which Hachette has no adequate remedy at law. Hachette therefore is entitled to a permanent

injunction against Sasson Parties' further infringing conduct.

## COUNT SIX
## UNFAIR COMPETITION UNDER NEW YORK LAW

72.    Hachette repeats and realleges the allegations of each of the foregoing paragraphs of this Counterclaim as if fully set forth herein.

73.    The actions of the Sasson Parties as alleged above constitute common law unfair competition and false advertising under New York law, and have caused and will cause impairment of the recognition of the ELLE Marks, and diminution of the value thereof.

74.    As a result of the actions of the Sasson Parties, Hachette has been and will continue to be seriously and irreparably damaged unless the Sasson Parties are enjoined from the use of false designations or representations which result in common law unfair competition with Hachette.

## COUNT SEVEN
## TRADEMARK DILUTION UNDER NEW YORK LAW

75.    Hachette repeats and realleges the allegations of each of the foregoing paragraphs of this Counterclaim as if fully set forth herein.

76.    Hachette's ELLE Marks are widely recognized by the general consuming public of the State of New York as a designation of source of the goods of Hachette.

77.    The Sasson Parties' acts as alleged herein are likely to cause injury to Hachette's business and reputation, and dilute the distinctive quality of the ELLE Marks.  Upon information and belief, the Sasson Parties knew and intended these acts to dilute the ELLE Marks and injure Hachette's business and reputation.  The Sasson Parties' acts constitute trademark dilution under New York law, including but not limited to New York General Business Law §360-L.

28

78.    Absent injunctive relief, Hachette has no means by which to control the Sasson Parties' dilution of Hachette's famous ELLE Marks. Hachette is therefore entitled to injunctive relief prohibiting the Sasson Parties from continuing such acts of dilution and unfair competition.

## PRAYER FOR RELIEF

WHEREFORE, Hachette prays that this Court enter judgment against the Sasson Parties as follows:

1.    That the Sasson Parties, its officers, agents, servants, employees, attorneys, and all persons acting for, with, by, through or under them be permanently enjoined and restrained from:

(a) using in any manner any of Hachette's ELLE Marks, the ELLE SASSON Mark, any mark that includes the term ELLE, or any other mark which so resembles the ELLE Marks as to be likely to cause confusion, deception, or mistake on or in connection with the advertising, offering for sale, or sale of any product not emanating from Hachette, or not authorized by Hachette to be sold in connection with the ELLE Marks;

(b) passing off, inducing, or enabling others to sell or pass off any product as and for products produced by Hachette, when such products are not in fact Hachette's products, or are not produced under the control and supervision of Hachette and approved by Hachette for sale under any of the ELLE Marks;

(c) committing any acts calculated to cause purchasers to believe that the Sasson Goods are those sold under the control and supervision of Hachette, or sponsored or approved by, or connected with, or guaranteed by, or produced under the control and supervision of Hachette;

(d) further diluting and infringing any of the ELLE Marks and damaging Hachette's goodwill;

(e) from otherwise competing unfairly with Hachette in any manner; and

(f) shipping, delivering, distributing, returning or otherwise disposing of, in any manner, products or inventory not manufactured by or for Hachette, nor authorized by Hachette to be sold or offered for sale, and which bear the ELLE SASSON Mark, any mark that includes the term ELLE, any of the ELLE Marks, or any mark confusingly similar thereto.

2. That the Sasson Parties be required to deliver up to Hachette any and all products, guarantees, circulars, price lists, labels, hang tags, signs, prints, packages, wrappers, pouches, receptacles, advertising matter, promotional, and other materials in the possession of the Sasson Parties or under its control bearing the ELLE SASSON Mark, any mark that includes the term ELLE and/or any mark that is confusingly similar to the ELLE Marks.

3. That the Sasson Parties, within thirty (30) days after service of judgment with notice of entry thereof upon it, be required to file with the Court and serve upon Hachette a written report under oath setting forth in detail the manner in which the Sasson Parties have complied with paragraphs 1 through 2, *supra.*

4. That the Sasson Parties account for and pay over to Hachette all profits realized by the Sasson Parties by reason of the Sasson Parties' unlawful acts herein alleged and, that the amount of damages for infringement of Hachette's registered trademarks be increased by a sum not exceeding three times the amount thereof as provided by law.

5. That Hachette be awarded actual damages of an amount to be proven at trial.

6. That Hachette be awarded interest, including pre-judgment interest, on all sums.

7.     That Hachette be awarded reasonable attorneys' fees and have such other and further relief as the Court may deem equitable.

8.     That this Court enter an order directing the United States Patent and Trademark Office to refuse registration of U.S. Application Serial No. 85/855,981 for the ELLE SASSON Mark.

9.     That Hachette have such other and further relief as the Court deems just and proper.

Dated: New York, New York
       May 9, 2016

McCARTER & ENGLISH, LLP


By:   s/Gary H. Fechter
      Gary H. Fechter
      Lori J. Shyavitz
245 Park Avenue, 27th Floor
New York, NY 10167
Tel: (212) 609-6800
Fax: (212) 609-6921
gfechter@mccarter.com
lshyavitz@mccarter.com

*Attorneys for Defendant-Counterclaim Plaintiff*
*Hachette Filipacchi Presse SA*

**<u>JURY DEMAND</u>**

Hachette demands a jury trial pursuant to Rule 38(b) of the Federal Rules of Civil

Procedure for all issues so triable.

Dated: New York, New York
   May 9, 2016

       McCARTER & ENGLISH, LLP


       By:   s/Gary H. Fechter
          Gary H. Fechter
          Lori J. Shyavitz
       245 Park Avenue, 27th Floor
       New York, NY  10167
       Tel: (212) 609-6800
       Fax: (212) 609-6921
       gfechter@mccarter.com
       lshyavitz@mccarter.com

       *Attorneys for Defendant-Counterclaim Plaintiff*
       *Hachette Filipacchi Presse SA*